[No. 15985. Department One. October 4, 1920.]

## In the Matter of the Application of BERNARD PARENT for a Writ of Habeas Corpus.[1]

HABEAS CORPUS (22)—COMMITMENT FOR CONTEMPT—SCOPE OF INQUIRY. Upon habeas corpus proceedings to release a prisoner, a commitment by a court of competent jurisdiction adjudging him guilty of contempt in violating an injunction and sentence to imprisonment for a definite term, shows legal cause for the imprisonment which cannot be inquired into.

CONTEMPT (28)—CRIMINAL OR CIVIL PROCEEDING. A commitment for violating an injunction negatives the idea that it was "to enforce a remedy of a party" within the meaning of Rem. Code, § 1075, subd. 2, and is a criminal, rather than a civil proceeding, where the injunction was issued at the instance of the prosecuting attorney for the preservation of order and the protection of the public in general.

HABEAS CORPUS (5, 8-1)—GROUNDS FOR RELIEF—JURISDICTION—ERRORS AND IRREGULARITIES. The validity of a judgment of a court of competent jurisdiction cannot be tested in habeas corpus proceedings, no matter to what extent error may have been committed and even though the judgment was voidable because of want of jurisdiction to render it, where the court had jurisdiction of the subject-matter and erroneously decided the question of its jurisdiction of the case.

INJUNCTION (73)—VIOLATION—JUDGMENT OF CONTEMPT. The superior court has jurisdiction to adjudge one guilty of contempt of court for violating its injunction, and to sentence such person to jail for a specified period.

Application filed in the supreme court July 22, 1920, for a writ of habeas corpus to release a person held in custody upon conviction of contempt of court. Denied.

*Leslie B. Sulgrove* and *George F. Vanderveer,* for petitioner.

*Joseph B. Lindsley* and *William C. Meyer,* for respondent.

[1]Reported in 192 Pac. 947.

PARKER, J.—The petitioner, Parent, is restrained of his liberty in the custody of the sheriff of Spokane county, imprisoned in the county jail of that county. He seeks in this court a writ of habeas corpus directed to the sheriff, to the end that he be released from such imprisonment. By consent of counsel for petitioner and the prosecuting attorney for Spokane county, representing the sheriff, the question of the legality of petitioner's imprisonment was heard in this court upon his petition for the writ, an order directed to the sheriff to show cause why the writ should not issue, and the sheriff's answer and return.

By the return of the sheriff, which is not controverted, the petitioner is held as a prisoner in the county jail of Spokane county by virtue of a commitment issued out of the superior court of that county, reading as follows:

"State of Washington, Plaintiff,           No. 60662
          vs.                            Commitment.
"Bernard Parent, Contemner.

"To the sheriff and keeper of the county jail in and for Spokane county, state of Washington:

"This is to certify that heretofore the above named defendant in the above entitled cause was duly convicted of the crime of contempt of court and violation of injunction of this court, and that he, the said defendant, was on the 8th day of July, 1920, sentenced by the Honorable R. M. Webster, judge of the above entitled court, to be confined in the county jail in and for said county and state for the period of four (4) months and to pay the costs of prosecution taxed at twelve and no/100 dollars.

"Now, therefore, you, the said sheriff, are hereby ordered in the name of the state of Washington forthwith to convey the said defendant to the said keeper of said jail; and you, the said keeper, are hereby ordered to receive the said defendant into your cus-

tody in said jail and him there safely keep until he shall thence be discharged by due course of law.

"Done in open court this 8th day of July, A. D. 1920.

"Witness the Honorable R. M. Webster, Judge of the above entitled court.

"Seal of superior court        Amery P. Gilbert, Clerk,
   of Spokane County,        By Frank C. Nash, Deputy.
   Washington."

That this commitment, upon its face, shows legal cause for the petitioner's imprisonment by the sheriff, issued, as it was, out of the superior court, a court of record and general jurisdiction, it seems to us is beyond question. Indeed, we do not understand counsel for petitioner to seriously contend that the commitment does not, upon its face, show legal cause for his imprisonment. It is contended, however, that when the commitment and the judgment of contempt upon which it was issued are viewed in the light of the proceedings leading up to his conviction and commitment, including the injunction decree and the record in the injunction case, it does become apparent that petitioner's imprisonment is illegal and without authority of law. By express statutory provisions, we are precluded in a habeas corpus proceeding from making inquiry touching the legality of the petitioner's imprisonment, beyond the commitment and the judgment upon which it is issued, when such judgment is rendered by a court of competent jurisdiction, except when the commitment is issued upon an order of contempt looking to the enforcement of a remedy awarded a party by an order or judgment of the court. In § 1075, Rem. Code, relating to habeas corpus, we read:

"No court or judge shall inquire into the legality of any judgment or process whereby the party is in custody, or discharge him when the term of commitment has not expired, in either of the cases following:

"1. Upon any process issued on any final judgment of a court of competent jurisdiction.

"2. For any contempt of any court, officer or body having authority in the premises to commit; but an order of commitment as for a contempt upon proceedings to enforce the remedy of a party, is not included in any of the foregoing specifications:"

Contention is made in petitioner's behalf that our inquiry is not limited in this case to the judgment of conviction and the commitment issued thereon by virtue of which petitioner is imprisoned, because the contempt judgment is "to enforce a remedy of a party," within the meaning of the concluding language of subd. 2, of § 1075, above quoted. This contempt judgment plainly negatives the idea that it was intended as a coercive measure to compel the petitioner to do something looking to the satisfaction of a judgment rendered awarding a party any relief as to his property rights. Petitioner was not committed to prison, there to remain until he did something that he was by the court ordered to do, but was adjudged guilty "of the crime of contempt and violation of the injunction of this court (superior court)," and sentenced "to be confined in the county jail in and for said county and state for the period of four (4) months." In other words, the judgment was purely one of punishment for a past act, and not one of mere coercion from the effect of which petitioner could relieve himself by compliance with the original injunction decree.

Our attention is called to decisions of this court in *In re Van Alstine,* 21 Wash. 194, 57 Pac. 348, and *In re Coulter,* 25 Wash. 526, 65 Pac. 759, as lending support to the contention here made in petitioner's behalf that the contempt judgment rendered against him was to enforce a remedy awarded in the injunction proceed-

ing, within the meaning of the concluding language of subd. 2 of § 1075, above quoted. In the *Van Alstine* case, the original order and judgment was that the petitioner and her codefendant pay into the court a sum of money within a certain time, failing to do which, contempt proceedings were brought against them with a view of coercing them to obey such order and judgment, resulting in an order of contempt that they "be confined and imprisoned in the county jail of King county, state of Washington, until they shall comply with and have performed the provisions of the decree; that is to say, until they, the said Lou Van Alstine and Emma Norton, shall have brought into and deposited in the registry of this court said sum of thirty thousand nine hundred and sixty-five dollars." Plainly that was a purely civil contempt proceeding looking to the coercion of petitioner and her codefendant satisfying the order and decree of the court. Upon petitioner's application for a writ of habeas corpus to be relieved from the imprisonment so adjudged against her, the court did inquire into the validity of the original decree and order for the payment of money into the court, and finding that the contempt order and judgment was without warrant because the order and decree for the payment of the money into court could not be lawfully so enforced, she was discharged from imprisonment, under the exception as to the limit of inquiry in habeas corpus proceedings found in the concluding language of subd. 2, § 1075, above quoted. Plainly that is not this case. It was exactly the kind of a case contemplated by the exception found in the statute.

In the *Coulter* case, the petitioner for the writ, seeking to be discharged from imprisonment, had a money judgment rendered against him, and failing to satisfy

the same, he was charged with contempt, resulting in a judgment and commitment which it seems, from the language of the court's opinion, in terms, sentenced him to imprisonment in the county jail for a period of ninety days. A critical reading of that decision, we think, renders it plain that this court assumed, rather than decided, that the contempt order and judgment was one of coercion looking to the compelling of the payment of the judgment by the petitioner, rather than one of punishment as a criminal contempt. Apparently that question was not given serious consideration either by counsel or the court. Had it been a seriously debated and considered question in the case, we do not think it possible that the court would have held that the contempt order and judgment was other than one of a criminal nature and not merely coercive looking to the satisfaction of the judgment; unless the contempt order and judgment did in terms, other than those briefly mentioned in the opinion, enable the petitioner to purge himself of the contempt by satisfying the judgment. It is possible some such fact not appearing in the opinion induced the court to regard the contempt judgment as merely coercive.

Should we look beyond the contempt judgment in this case to the proceedings leading up to it, including the proceedings and decree in the injunction case, we would find that the injunction decree was not rendered looking to the securing of the individual property rights of any party to that case. As disclosed by the petition for the writ in this case, the injunction was issued at the instance of the prosecuting attorney for Spokane county, looking merely to the preservation of the peace, good order, and protection of the public in general. Thus it would also clearly appear, as it does upon the face of the contempt judgment itself, that it

is not of that class which enables this court to look beyond the judgment and commitment in habeas corpus proceedings with a view of determining the legality of petitioner's imprisonment. If this is not a pure criminal contempt proceeding under the first part of subd. 2 of § 1075, above quoted, and is not a final judgment within the meaning of paragraph 1 of that section, then it seems to us there is no such thing as a criminal contempt proceeding as distinguished from a civil contempt proceeding touching the violation of court orders and judgments. If this be not the correct view of the law, then all contempt proceedings prosecuting against a party because of his violation of an order or judg-- ment of a court are civil contempt proceedings and merely coercive in their nature, looking to the enforcement of the order or judgment claimed to be violated. Observations made by us in *Snook v. Snook,* 110 Wash. 310, 188 Pac. 502, point out that there is a marked distinction between criminal and civil contempt proceedings and judgments rendered therein. The former looks to punishment purely as such. The latter looks only to coercion to compel compliance with an order or judgment calling for the doing of some act by the accused. We are quite convinced that this proceeding belongs to the former and not to the latter class; and that the judgment of conviction as for contempt rendered in this case is as conclusive and final as a specific punishment judgment rendered in a purely criminal case.

That this judgment was rendered by a court of competent jurisdiction, speaking generally, that is, by a court having jurisdiction to render such a judgment of contempt, it being rendered by a court of general jurisdiction, we think is elementary law. Whether or not the court acted erroneously, even to the extent of

acting beyond its jurisdiction in the particular case, is, we think, not a question to be considered in this habeas corpus proceeding. It has become the settled law of this state by our decision in *In re Newcomb,* 56 Wash. 395, 105 Pac. 1042, that the validity of a judgment of a superior court cannot be tested in habeas corpus proceedings, no matter to what extent error may have been committed in its rendition, even though such judgment may be voidable because of want of jurisdiction in the court to render such judgment; because the very question of whether or not the court had jurisdiction in the particular case, it having jurisdiction of the subject-matter, speaking generally, is one of the questions for the court itself to decide in the first instance. In other words, that the erroneous decision of the superior court, a court of general jurisdiction, as to it having jurisdiction of the particular case is, in its last analysis, only the commission of error by that court. In the *Newcomb* case, there was sought to be drawn in question in a habeas corpus proceeding the very existence of the law under which Newcomb was convicted, he seeking to be released from imprisonment by habeas corpus upon the ground that there was no law in existence rendering the act done by him punishable at the time of the commission of the act. Referring to this question so sought to be drawn into the habeas corpus proceeding for decision therein, Chief Justice Rudkin, speaking for the court, said:

"The superior court was vested with full and complete jurisdiction to determine that question, and whether its determination was right or wrong its jurisdiction to hear the case continued and its final judgment is not void. The authorities are by no means agreed upon the proposition, but in our opinion, if a court of general jurisdiction determines a question of law or fact, properly before it in the exercise of its

acknowledged jurisdiction, its determination cannot be void, however erroneous it may be."

And after reviewing numerous authorities, the Chief Justice further said:

"After a full and exhaustive examination of the authorities, we are convinced that the judgment of the superior court of Pierce county is not void for any of the reasons assigned. That court had full and complete jurisdiction to determine every question here presented, and its determination is not and cannot be void. We are further of the opinion that where a party is held in custody under process issued on the final judgment of a court of competent jurisdiction, or upon a warrant issued from the superior court upon an information or indictment, he is not entitled to his discharge on habeas corpus unless such process or judgment be void, and a judgment is not void simply because the court decided erroneously some question properly before it and within its acknowledged jurisdiction. In habeas corpus matters we exercise original, not appellate jurisdiction."

It may be that there was error, both in the injunction and contempt proceedings, which if properly presented here would call for the reversal of the judgments rendered therein; but manifestly, under the law as now settled in this state, it is not our privilege to review or test the correctness of either of those judgments in this proceeding. When petitioner was adjudged guilty of contempt and committed to the county jail by the judgment here in question, ample remedy was afforded him to have that judgment reviewed and set aside, if erroneous—and the same may be said as to the injunction decree—by appeal to this court, or by review, if appeal be inadequate to effectively secure his rights in that behalf. We conclude that petitioner is not entitled to the writ of habeas corpus, because the judgment of contempt rendered against him was a final

judgment of a court of competent jurisdiction; and though rendered in a contempt proceeding, it was not a judgment "as for a contempt upon proceedings to enforce the remedy of a party."

The writ is denied.

HOLCOMB, C. J., FULLERTON, MAIN, and MITCHELL, JJ., concur.