[No. 29092. Department Two. September 3, 1943.]

*In the Matter of the Application of* WILLIAM R. HORNER *for a Writ of Habeas Corpus.*[1]

William R. Horner, *pro se.*

The Attorney General, R. *Max Etter, Assistant,* and *Melvin C. Rooney,* for respondent.

ROBINSON, J.—The petitioner has been confined in the state penitentiary since 1918, under a life sentence for first degree murder. It appears, from exhibits attached to his petition, that, in April of this year, he applied to the district

[1] Reported in 141 P. (2d) 151.

court of the United States for the eastern district of Washington for a writ of *habeas corpus*, which application was denied, on the ground that he had not first attempted to make use of the corrective judicial processes of the state courts. He thereupon filed his petition in this court, and an order to show cause was issued to the respondent, who has appeared and answered.

The petitioner alleges, as many *habeas corpus* petitions filed here allege, that, immediately after his arrest, a confession was wrung from him by violence. He avers that, upon his arrest and while temporarily in jail at Seattle,

" . . . he was told that he was wanted for murder in Cowlitz county, and because he would not confess to said murder, he was intimidated, beaten, threatened with violence and otherwise abused and mistreated until he stated to said law enforcing officers that he was guilty in order to keep them from further inflicting physical abuse upon your petitioner; that thereafter, in an effort to force your petitioner to sign a confession to said murder, which confession had been drawn up by the said law enforcing officers, petitioner was again abused, beaten and mistreated until he became unconscious."

He further alleges:

"VII. That thereafter, your petitioner was taken to Kalama, Washington, where, on the following morning, to-wit, Monday the 27th day of May, 1918, he was taken before the Honorable Wm. T. Darch, Judge of the superior court of Cowlitz county, without being informed or advised of the nature of the accusations against him, or without being furnished with a copy of the information filed in said cause, and asked by the Court, 'Did you plead guilty,' or 'Do you plead guilty,' to which interrogations your petitioner stated, 'I plead guilty.'

"VIII. That thereupon, the Court immediately adjudged your petitioner guilty of the crime of 'MURDER IN THE FIRST DEGREE' and fixed his punishment at confinement in the state penitentiary for the term of his life, without the Court advising your petitioner of his valuable and substantial right to the advise and assistance of counsel, and without a jury being called or impaneled to determine the degree of murder of which petitioner was guilty or the punishment

therefor, as Section 2116, of Remington's Revised Statutes of Washington provides.

"IX. That your petitioner is an uneducated layman, and has had no knowledge of law or legal procedure, and has never before been arrested or been in a court room for any purpose whatsoever, and upon the imposition of the life sentence as aforesaid, your petitioner vigorously protested, and asked the Court and prosecuting attorney for a copy of the charge to which he had pleaded guilty, which request was refused; that your petitioner then requested permission to withdraw the plea of guilty and that an attorney be appointed, or he be permitted to secure one, to advise and assist him, and that he be given a proper opportunity to defend himself, all of which requests were refused by the Court, and shortly thereafter your petitioner entered the penitentiary by reasons of a warrant of commitment based upon the judgment and sentence above referred to, and he has remained in the penitentiary under that commitment ever since.

"X. That during the twenty-five years petitioner has been in the penitentiary he has done everything an uneducated person could do to bring his illegal imprisonment to the attention of the Washington Authorities, but has not been able to get counsel because of lack of funds, and his appeals to various parole boards and various governors have been futile; that because of petitioner's ignorance of his rights, and because of the trial court's failure to appoint, and his inability to obtain counsel, the original sentence was not appealed."

It may be stated at this point that copies of the record, submitted by the petitioner himself as true copies, recite that the petitioner "declined to have an attorney."

For the most part, the allegations of the petitioner raise matters which the court will not inquire into in a *habeas corpus* proceeding. But it is alleged that the trial judge entered judgment and sentence on his plea of guilty without calling a jury, as provided by Rem. Rev. Stat., § 2116 [P. C. § 9169]. The respondent admits this allegation. Furthermore—and this is of controlling importance—it so appears upon the face of the judgment and sentence by virtue of which the petitioner was committed to the state penitentiary.

The respondent relies upon the cases of *In re Voight* [Voigt], 130 Wash. 140, 226 Pac. 482, and *Voigt v. Mahoney*, 10 Wn. (2d) 157, 116 P. (2d) 300, among others, and especially upon the second *Voigt* case, decided in 1941. No copy of the judgment and sentence accompanied the petition in that case, although there was attached to it a copy of the commitment which recited that the petitioner had been "duly convicted." It was proposed to show, by extraneous evidence, such as the affidavit of the prosecutor, that no jury was called. The court refused to enter into that factual inquiry, partly on the ground that it does not have the facilities for trying out questions of fact, but principally because the opinion rendered by the court in passing upon Voigt's first application for a writ of *habeas corpus* in 1924 showed that it had a copy of the judgment and sentence before it and held it valid on its face. Accepting that holding, the court disposed of the second application in 1941 by applying the generally accepted rule, saying:

"This court held in that case [the first *Voigt* case] that the judgment of conviction was not void upon its face, even though it might have been erroneous. The opinion announced the rule, to which we now adhere, that the writ of *habeas corpus* cannot be used to attack a judgment collaterally, even though the judgment be erroneous, unless it be utterly void. . . . "

The vital question in this case is: Is the judgment and sentence under which the respondent holds the petitioner void on its face?

We quote an excerpt from a note in 76 A. L. R. 468, which was quoted with approval in our recent decision in *Williams v. McCauley*, 7 Wn. (2d) 1, 108 P. (2d) 822:

"While it is well settled that a writ of habeas corpus cannot be permitted to perform the functions of an appeal or writ of error to review the errors or irregularities of a court of competent jurisdiction, it is equally well established that, if the judgment under which one is restrained of his liberty is void, it may be assailed, and habeas corpus is a proper remedy. The jurisdiction of a court or judge to render a judgment is always a proper subject of inquiry on habeas corpus, and is in fact the primary and generally

the only question open to inquiry. While some of the earlier decisions inclined to the view that, when a court had jurisdiction of the subject-matter and of the person of the defendant, its judgment was conclusive on habeas corpus . . . , *it is now generally conceded that, in order to render a judgment immune from attack, the court must have had not only jurisdiction of the subject-matter and of the person of the defendant, but also authority to render the particular judgment in question, and if either of these elements is wanting the judgment is fatally defective and open to collateral attack."* (Italics ours.)

We have, in recent years, repeatedly released petitioners, by writ of *habeas corpus,* from the particular custody complained of, where the trial court unquestionably had jurisdiction of the subject matter and of the person but no authority to render the particular judgment and sentence under which the petitioner was held. These decisions were rendered in instances where the court held that the judgment and sentence, by virtue of which the custody complained of was maintained, was void on its face and, like all void judgments, subject to collateral attack. In these cases, however, the petitioner was not set free, but merely discharged from the custody under which he was then held and remanded to the custody of the authorities of the county where his offense was alleged to have been committed, and where his case was tried, in order to give the superior court an opportunity, if, in its judgment, the law and the facts warranted it, to impose a valid judgment and sentence. This procedure had been followed, under similar circumstances, in the Federal courts. *McCoy v. McCauley,* 20 F. Supp. 200; *Dooly v. Mahoney,* 42 F. Supp. 890. In considering the case of *In re Cress,* 13 Wn. (2d) 7, 123 P. (2d) 767, we found it possible to adopt a similar procedure, since, as therein noted, our *habeas corpus* statutes provide, as follows:

"The court or judge may make any temporary orders in the cause or disposition of the party during the progress of the proceedings that justice may require. The custody of any party restrained may be changed from one person to

another, by order of the court or judge." Rem. Rev. Stat., § 1083 [P. C. § 8047].

The procedure adopted in the *Cress* case, decided in May, 1942, was carefully reexamined and followed in *In re Towne*, 14 Wn. (2d) 633, 129 P. (2d) 230, decided in September, 1942, and has been consistently followed in subsequent cases of the same nature. See, for example, *In re McCauley*, 16 Wn. (2d) 707, 133 P. (2d) 525; *In re Collins*, 16 Wn. (2d) 708, 133 P. (2d) 811; *In re Richardson*, 16 Wn. (2d) 709, 133 P. (2d) 810; all of which have been decided during the present calendar year.

In the foregoing series of decisions, the court has not departed from the position taken in the *Voigt* cases, *supra*, that it will not, in considering a petition for *habeas corpus*, enter upon a factual inquiry to determine whether the judgment and sentence under which the petitioner is held is void. But it has relaxed the rule formerly recognized in such cases, as *In re Newcomb*, 56 Wash. 395, 105 Pac. 1042 (followed in *In re Parent*, 112 Wash. 620, 192 Pac. 947, and other cases), that, in a *habeas corpus* proceeding, a judgment and sentence cannot be held void for lack of authority to pronounce the particular judgment and sentence involved, if the court had jurisdiction of the subject matter and of the person. As we have indicated by the quotation hereinbefore made from the note in 76 A. L. R. 468, the weight of judicial opinion now is that, in order to render a judgment immune from collateral attack by *habeas corpus*, the court must have had not only jurisdiction of the subject matter and of the person of the defendant, but also authority to render the particular judgment in question. See, to the same effect, 4 Bancroft's Code Practice and Remedies 4295, § 3279; 25 Am. Jur., Habeas Corpus, 161, § 27; 29 C. J., Habeas Corpus, 30, § 20; also, the cases cited in 76 A. L. R. 477, in support of the rule that, where a court enters an excessive sentence, as, for example, twenty years, when the maximum provided is but ten, that part of the sentence which is excessive is void, and the prisoner may seek relief by *habeas corpus*. See, also, the

cases cited to the following rule stated on page 495 of the same note:

"If the vice of the sentence is not merely that it is of an excessive duration, but that it is absolutely unauthorized, or of an entirely different character from that authorized by law, it is generally held that such sentence is void, and that the prisoner will be discharged, at least from imprisonment under that particular sentence."

That a judgment and sentence which is unauthorized is void, although the court had jurisdiction of the subject matter and of the person, has long been the rule of the supreme court of the United States. We quote from one of its many decisions to that effect, *Windsor v. McVeigh*, 93 U. S. 274, 282, 23 L. Ed. 914:

"The doctrine invoked by counsel, that, where a court has once acquired jurisdiction, it has a right to decide every question which arises in the cause, and its judgment, however erroneous, cannot be collaterally assailed, is undoubtedly correct as a general proposition, but, like all general propositions, is subject to many qualifications in its application. Though the court may possess jurisdiction of a cause, of the subject matter, and of the parties, it is still limited in its modes of procedure, and in the extent and character of its judgments. . . .

"So a departure from established modes of procedure will often render the judgment void; thus, the sentence of a person charged with felony, upon conviction by the court, without the intervention of a jury, would be invalid for any purpose."

In the instant case, it is manifest, from the plain terms of the statute, that the petitioner did not—and, indeed, could not—waive a jury by his plea of guilty; and it is equally apparent that the trial judge had no authority to enter judgment and sentence unless and until a jury determined the degree of the crime, for the applicable statute reads as follows:

"If, on the arraignment of any person, he shall plead guilty, if the offense charged be not murder, the court shall, in its discretion, hear testimony, and determine the amount and kind of punishment to be inflicted; but if the defendant plead guilty to a charge of murder, a jury shall be im-

paneled to hear testimony, and determine the degree of murder and the punishment therefor." Rem. Rev. Stat., § 2116.

■ For the reasons above shown, the petitioner is entitled to be discharged from the particular custody in which he is now held, that is, from the custody of the respondent. But he is not entitled to go free. His status is that of one who has pleaded guilty to a charge of murder in the first degree, but has not been sentenced. This being so, no final order will be made at this time, but the court will, under the authority of Rem. Rev. Stat., § 1083 [P. C. § 8047], enter a temporary order changing his custody from the superintendent of the state penitentiary to that of the sheriff of Cowlitz county, there to be dealt with as the superior court of that county shall deem consonant with law and justice. Accordingly,

IT IS ORDERED that, as soon as may be after the service of a certified copy of this opinion and order upon the superintendent of the state penitentiary, said superintendent shall cause the petitioner, William R. Horner, against whom, it appears, an information charging first degree murder is pending, undisposed of, in cause No. 4069, records, Cowlitz county, to be delivered to the sheriff of said county to be by him held in custody until otherwise ordered by the superior court of Cowlitz county or by a further order of this court.

IT IS FURTHER ORDERED that, upon the filing of this opinion and order, the clerk of this court shall forthwith mail a true copy thereof to each of the following officers or persons: (1) the petitioner, William R. Horner, (2) the superintendent of the state penitentiary, (3) the sheriff of Cowlitz county, and (4) the prosecuting attorney of Cowlitz county, certifying the copy sent to the superintendent of the state penitentiary to serve as his authority to surrender the custody of the petitioner, as herein ordered.

SIMPSON, C. J., BEALS, BLAKE, and GRADY, JJ., concur.