[No. 30588. Department One. May 25, 1948.]

*In the Matter of the Application of* MATIAS LAGUNILLA *for a Writ of Habeas Corpus.*[1]

[1]Reported in 193 P. (2d) 875.

*Caughlan & Hatten,* for petitioner.

*Bassett & Geisness,* for respondent.

SCHWELLENBACH, J.—Petitioner filed an original application in this court for a writ of *habeas corpus,* alleging that he was deprived of his liberty by Harlan Callahan, sheriff of King county, Washington, under an order of the superior court for King county finding him to be in contempt. The writ was issued, and the sheriff was directed to show cause on April 23, 1948, why the petitioner should not be restored to his liberty. The sheriff's return alleges, on information and belief, that, at the time of petitioner's arrest, there was being tried in the superior court of the state of Washington for King county, before the Honorable Robert M. Jones, one of the judges of said court, a cause entitled, "Food, Tobacco, Agricultural & Allied Workers Union of America, a voluntary association, et al., plaintiffs, v. V. A. Velasco, et al., defendants, and Perfecto C. Ancheta, et al., additional defendants," being cause No. 385461.

That said action is a suit by the plaintiffs, Food, Tobacco, Agricultural & Allied Workers Union of America, and Trinidad A. Rojo, Prudencio P. Mori, C. L. Camarillo, Ernesto A. Mangaoang, Jorge Dumlao, Gene Navarro, Casimiro A. Abella, Pablo S. Valdez, and Wendell Phillips, temporary officers of Cannery Workers & Farm Laborers' Union, Local 7; that Local 7 is one of the subordinate divisions of the international organization; that defendant V. A. Velasco, and others, defended on behalf of Local 7; that the subject matter of the suit was the business, property, and affairs of Local 7, and the custody, management, control, and disposition thereof.

That, since prior to March 8, 1948, there was pending in said cause a petition requesting the appointment of a receiver, and the dissolution and distribution of the assets

of Local 7, upon the grounds that the officers administering its affairs have misapplied and depleted a certain trust fund existing for the benefit of all of its members; that on March 8, 1948, the Honorable Robert M. Jones, in said cause, made and entered an order requiring the plaintiffs to allow the defendants to inspect the financial records of the organization pertaining to the trust funds.

That, on April 2, 1948, Trinidad A. Rojo, Prudencio P. Mori, and Ernesto A. Mangaoang, Jorge Dumlao, Gene Navarro, and Casimiro A. Abella, plaintiffs, appeared before the court in response to an order to show cause why they should not be adjudged guilty of contempt for failure to comply with the order for inspection; that in the course of said hearing, Matias Lagunilla testified in open court that he was, and at all times since prior to March 8, 1948, had been, senior trustee of Local 7 and that at all times since prior to the order of March 8, 1948, he had and still had, physical possession, custody, and control of the documents designated in the order, and that shortly after the entry of said order, he attended a meeting of the executive council of Local 7 and voted against turning over the documents in response to said order.

The order adjudging contempt is as follows:

"In the Superior Court of the State of Washington for King County

| "Food, Tobacco, Agricultural & Allied Workers Union of America, a voluntary association, et al., *Defendants,* v. V. A. Velasco, et al., *Defendants.* | No. 385461 Order Adjudging Contempts of Court and Imposing Penalty |
| --- | --- |

"This matter came regularly before the court on Friday, the 2nd day of April, 1948, upon an order requiring plaintiffs to show cause why they should not be adjudged guilty of contempt of court for failure to comply with that certain order for inspection of documents made and entered in the above cause March 8, 1948, and upon return to warrants issued for the arrests of the individual plaintiffs, the plaintiffs Trinidad A. Rojo and Prudencio P. Mori being present in person and represented by their attorney, John Walthew, the plaintiffs Ernesto A. Mangaoang, Jorge Dumlao, Gene

Navarro, Casimiro A. Abella being present in person and represented by their attorneys, Caughlan & Hatten, and the defendants being represented by their attorneys, Bassett & Geisness, and the court having examined the records and files herein, the affidavits submitted by the respective parties and having heard evidence adduced by the respective parties and being fully advised in the premises, finds that the plaintiffs Prudencio P. Mori, Ernesto A. Mangaoang, Jorge Dumlao, Gene Navarro and Casimiro A. Abella have wilfully failed and refused to produce for inspection the documents designated in said order of March 8, 1948 and have wilfully evaded said order and encouraged disobedience thereof and that Matias Lagunilla is an officer and trustee of Cannery Workers & Farm Laborers' Union, Local 7, and has, and at all times since said order of March 8, 1948, has had, physical possession, custody and control of the documents designated in said order and has at all times since the entry of said order of March 8, 1948, wilfully failed and refused to comply with said order by the production of said documents and has wilfully evaded said order and encouraged non-compliance therewith, IT IS ORDERED AND ADJUDGED:

"That the said Matias Lagunilla has been and is in contempt of this court; that he forthwith deliver to counsel for defendants the books & documents set forth in the order of Mar. 8, 1948 and in case of his failure to so do that he be committed to the County Jail in the County of King, State of Washington, until he delivers or causes to be delivered said documents for inspection in compliance with said order of March 8, 1948, and for an additional period of 21 days and the Clerk of this court is hereby directed to issue a warrant directing the Sheriff of said county to apprehend the said Matias Lagunilla and imprison him in said County Jail until said documents are produced in accordance with said order and for an additional period of 21 days or until further order of this court.

"IT IS FURTHER ORDERED AND ADJUDGED that Prudencio P. Mori, Ernesto A. Mangaoang, Jorge Dumlao, Gene Navarro, Casimiro A. Abella have been and are in contempt of this court and each is ordered to pay into the registry of said court a fine in the sum of $50.00 and to stand committed in the County Jail of King County, State of Washington, until said fine is paid and the Clerk of said court is directed to issue warrants directing the Sheriff of said county to apprehend each of said persons required to pay such fine and to

imprison each of them in the County Jail of said county until he has paid the fine hereinabove required of him.

"DONE IN OPEN COURT this 2 day of April, 1948.

"(SIGNED) ROBERT M. JONES
"Judge"

Contempts are defined in Rem. Rev. Stat., § 1049 [P.P.C. § 20-1]:

"The following acts or omissions, in respect to a court of justice or proceedings therein, are deemed to be contempts of court: —

"(1) Disorderly, contemptuous, or insolent behavior toward the judge while holding the court, tending to impair its authority, or to interrupt the due course of a trial or other judicial proceedings; . . .

"(4) Deceit, abuse of the process, or proceedings of the court by a party to an action, suit, or special proceedings;

"(5) Disobedience of any lawful judgment, decree, order, or process of the court; . . .

"(9) Any other unlawful interference with the process or proceedings of a court; . . ."

Rem. Rev. Stat., § 1050 [P.P.C. § 20-3], provides:

"Every court of justice and every judicial officer has power to punish contempt by fine or imprisonment, or both. But such fine shall not exceed three hundred dollars, nor the imprisonment six months; and when the contempt is not [one] of those mentioned in subdivisions one and two of the last section, it must appear that the right or remedy of a party to an action, suit, or proceeding was defeated or prejudiced thereby, before the contempt can be punished otherwise than by a fine not exceeding one hundred dollars."

Rem. Rev. Stat., § 1051 [P.P.C. § 20-5], provides:

"When a contempt is committed in the immediate view and presence of the court or officer, it may be punished summarily, for which an order must be made reciting the facts as occurring in such immediate view and presence, determining that the person proceeded against is thereby guilty of contempt, and that he be punished as therein prescribed."

Rem. Rev. Stat., § 1052 [P.P.C. § 20-7], provides:

"In cases other than those mentioned in the preceding section, before any proceedings can be taken therein, the

facts constituting the contempt must be shown by an affidavit presented to the court or judicial officer, and thereupon such court or officer may either make an order upon the person charged to show cause why he should not be arrested to answer, or issue a warrant of arrest to bring such person to answer in the first instance."

Section 1056 provides for the trial on contempt charges; § 1057 provides for judgment and sentence upon a finding that the defendant is guilty of contempt.

Rem. Rev. Stat., § 1059 [P.P.C. § 20-21], provides:

"When the contempt consists in the omission or refusal to perform an act which is yet in the power of the defendant to perform, he may be imprisoned until he shall have performed it, and in such case the act must be specified in the warrant of commitment."

Rem. Rev. Stat., § 1075 [P.P.C. § 58-23], provides:

"No court or judge shall inquire into the legality of any judgment or process whereby the party is in custody, or discharge him when the term of commitment has not expired, in either of the cases following: —

" (1) Upon any process issued on any final judgment of a court of competent jurisdiction;

" (2) For any contempt of any court, officer or body having authority in the premises to commit; but an order of commitment, as for a contempt upon proceedings to enforce the remedy of a party, is not included in any of the foregoing specifications; . . ."

In *In re Parent,* 112 Wash. 620, 192 Pac. 947, the petitioner was held in the county jail of Spokane county by virtue of a commitment issued out of the superior court of that county after he had been sentenced for contempt. We there said:

"That this commitment, upon its face, shows legal cause for the petitioner's imprisonment by the sheriff, issued, as it was, out of the superior court, a court of record and general jurisdiction, it seems to us is beyond question. Indeed, we do not understand counsel for petitioner to seriously contend that the commitment does not, upon its face, show legal cause for his imprisonment. It is contended, however, that when the commitment and the judgment of contempt upon which it was issued are viewed in the light of the proceedings leading up to his conviction and commitment, including the injunction decree and the record in the injunction case,

it does become apparent that petitioner's imprisonment is illegal and without authority of law. By express statutory provisions, we are precluded in a habeas corpus proceeding from making inquiry touching the legality of the petitioner's imprisonment, beyond the commitment and the judgment upon which it is issued, when such judgment is rendered by a court of competent jurisdiction, except when the commitment is issued upon an order of contempt looking to the enforcement of a remedy awarded a party by an order or judgment of the court. In § 1075, Rem. Code, relating to habeas corpus, we read: [quoting above statute]

"Contention is made in petitioner's behalf that our inquiry is not limited in this case to the judgment of conviction and the commitment issued thereon by virtue of which petitioner is imprisoned, because the contempt judgment is 'to enforce a remedy of a party,' within the meaning of the concluding language of subd. 2, of § 1075, above quoted. This contempt judgment plainly negatives the idea that it was intended as a coercive measure to compel the petitioner to do something looking to the satisfaction of a judgment rendered awarding a party any relief as to his property rights. Petitioner was not committed to prison, there to remain until he did something that he was by the court ordered to do, but was adjudged guilty 'of the crime of contempt and violation of the injunction of this court (superior court),' and sentenced 'to be confined in the county jail in and for said county and state for the period of four (4) months.' In other words, the judgment was purely one of punishment for a past act, and not one of mere coercion from the effect of which petitioner could relieve himself by compliance with the original injunction decree."

■ Looking now to the order upon which petitioner is being held, we see that it clearly shows on its face that it was a purely civil contempt proceeding looking to the coercion of petitioner to satisfy the order of the court to forthwith deliver the books and records to counsel for the defendants, and in case of his failure to do so, that he be committed to jail. Where the order of commitment is "to enforce a remedy of a party" and is a coercive measure, rather than a final order finding a person guilty of contempt, we may, in a *habeas corpus* proceeding, consider the legality of such order. *In re Van Alstine,* 21 Wash. 194, 57 Pac. 348; *In re Coulter,* 25 Wash. 526, 65 Pac. 759.

■ In passing, may we state that although we directed the sheriff of King county to show cause why the petitioner should not be restored to his liberty, the sheriff had no right, in his return, to go beyond the order of the court. Any statements in the sheriff's return, except the fact that he was holding the petitioner by virtue of an order of the court, which he set out in full, are surplusage and will not be considered by us.

■ Let us examine the order to determine whether or not the court had jurisdiction of the person of petitioner. We find that the hearing of April 2, 1948, was upon an order requiring plaintiffs to show cause why they should not be adjudged guilty of contempt, and upon return to warrants issued for the arrests of the individual plaintiffs. The plaintiffs named in the order were Rojo, Mori, Mangaoang, Dumlao, Navarro, and Abella. The court found, after a hearing, that the plaintiffs, Mori, Mangaoang, Dumlao, Navarro and Abella, were guilty of contempt. The court also found that Matias Lagunilla (petitioner) was guilty of contempt. But nowhere in the order is there a showing that petitioner was present in court in response to an order to show cause, nor by virtue of a warrant issued for his arrest. The court did not have jurisdiction of the person of petitioner which would warrant his being found guilty of contempt.

■ A witness to a proceeding may be found guilty of contempt, committed in the presence of the court, under the provisions of Rem. Rev. Stat., § 1051. But the order so finding him guilty of contempt must recite the facts as occurring in the immediate view and presence of the court. We find nothing in this order which shows that such a contempt has been found.

The writ will be granted.

MALLERY, C. J., MILLARD, and ROBINSON, JJ., concur.

HILL, J. (concurring in the result)—I concur in the result, but I desire to make it clear that in my opinion, assuming the facts to be as stated in the return of the sheriff, Judge Robert M. Jones was entirely justified in adjudging Matias Lagunilla to be in contempt of court. Had he failed

to do so, it would have been a confession that in the effort to compel the production of documents and records the courts are reduced to the status of participants in a game of "Button, Button, who has the button?" Unfortunately, the order fixing his punishment did not comply with the terms of Rem. Rev. Stat., § 1051, by reciting the facts as occurring in the immediate view and presence of the court, and for that reason I agree that the writ should be granted.