[No. 83544-6.   En Banc.]

Argued January 20, 2011.      Decided November 17, 2011.

*In the Matter of the Personal Restraint of* Jeffrey A. Coats, *Petitioner.*

*Jeffrey E. Ellis* (of *Oregon Capital Resource Center*), for petitioner.

*Mark E. Lindquist, Prosecuting Attorney for Pierce County*, and *Kathleen Proctor, Deputy*, for respondent.

¶1 CHAMBERS, J. — In 1995, Jeffrey Coats pleaded guilty to conspiracy to commit murder, conspiracy to commit robbery, and robbery, all in the first degree. He received a standard range sentence of 20 years. His judgment and sentence erroneously states that the maximum sentence for conspiracy to commit robbery is life in prison. Fourteen years later, he filed a personal restraint petition, contending that because of the erroneous statement, his judgment is not valid on its face and therefore he should be allowed to withdraw his guilty plea. We take this occasion to review our jurisprudence regarding the statutory one-year time

limit for collateral attacks on judgments that are valid on their faces under RCW 10.73.090. We conclude that Coats's judgment is valid on its face despite the error; that the sentencing court did not exceed its authority in sentencing Coats; and that Coats's petition must be denied.

## BACKGROUND

¶2 Resolution of the issues presented does not turn on the facts of Coats's crime. We briefly describe the event for context. In 1994, when he was 14 years old, Coats and two friends decided to kill a man and steal his BMW. They armed themselves with a kitchen knife and a pipe in a bag that they would later claim was a gun. A security patrol officer found the three and chased them away from their intended victim. They wandered until they spotted David Grenier parking his Lexus. The three friends approached Grenier, robbed him, duct taped his hands and feet together, locked him in the trunk of his car, and drove him to a secluded spot near the Puyallup River. Being mercifully inept, one of the friends accidentally opened the trunk and Grenier was able to escape.

¶3 Coats was initially charged with six counts: I. conspiracy to commit kidnapping, II. conspiracy to commit first degree robbery, III. conspiracy to commit first degree murder, IV. first degree kidnapping, V. first degree robbery, and VI. first degree attempted murder. The juvenile court declined jurisdiction. While one of his friends was being tried, Coats pleaded guilty to first degree robbery, conspiracy to commit first degree robbery, and conspiracy to commit first degree murder. Likely, in return for his guilty plea, the prosecution dropped the other three charges and made a standard range sentencing recommendation on the rest.

¶4 Unfortunately, the judgment and sentence signed by the trial judge contained an error. The judgment erroneously reported that the maximum sentence for conspiracy

to commit first degree robbery was life in prison. The "Statement of the Defendant on Plea of Guilty" states that the maximum was 20 years.[1] The parties before us agree that the maximum sentence available at the time for conspiracy to commit first degree robbery was in fact 10 years. Both documents correctly state that the maximum sentence on the other two charges was life in prison. Coats received standard range sentences of 51 months for conspiracy to commit robbery, 240 months for conspiracy to commit murder, and 109 months for robbery, all to be served concurrently. Coats did not appeal.

¶5 Fourteen years later, Coats filed this personal restraint petition in the Court of Appeals, alleging that since his judgment and sentence contained an obvious error, it was invalid on its face. In Coats's view, the error on the judgment opened the door to allow him to attack the validity of his guilty plea. Coats reasons that because his "plea was based on misinformation about a direct consequence, it was neither knowing nor voluntary." Pers. Restraint Pet. at 2. The Court of Appeals dismissed the petition by order of the acting chief judge on the ground that the error was merely a " 'technical misstatement that had no actual effect on the rights of the petitioner.' " Order Dismissing Pet. and Denying Mot. for Release from Custody at 2 (quoting *In re Pers. Restraint of McKiearnan*, 165 Wn.2d 777, 783, 203 P.3d 375 (2009)). We granted Coats's motion for review "only on the issue of whether Petitioner's

---

[1] At the plea hearing, the judge reflected the error on the defendant's statement on plea of guilty in his colloquy with Coats:

Robbery in the First Degree has a maximum penalty of life in prison and a standard range, based on your known criminal history, of 51 to 68 months. Conspiracy to Commit Robbery in the First Degree has a maximum penalty of 20 years in prison and/or a $50,000 fine and a standard sentencing range, based on your known criminal history, of 38.25 months to 51 months. Conspiracy to Commit Murder in the First Degree has a maximum penalty of life in prison and a standard range, based on your known criminal history, of 210.75 to 270 months.

State's Resp. to Pers. Restraint Pet., App. B (Verbatim Report of Proceedings at 5-6).

judgment and sentence is facially invalid, and if so, whether he is entitled to withdraw his guilty plea." Order (Wash. June 2, 2010).

## ANALYSIS

¶6 Coats challenges his detention through a personal restraint petition. Personal restraint petitions are modern version of ancient writs, most prominently habeas corpus, that allow petitioners to challenge the lawfulness of confinement. *Toliver v. Olsen*, 109 Wn.2d 607, 609-11, 746 P.2d 809 (1987).

¶7 Habeas predates both Washington State and the United States. As we noted recently, it is

> "a writ antecedent to statute, and throwing its root deep into the genius of our common law. . . . It is perhaps the most important writ known to the constitutional law of England, affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement. It is of immemorial antiquity, an instance of its use occurring in the thirty-third year of Edward I."

*In re Pers. Restraint of Grantham*, 168 Wn.2d 204, 210, 227 P.3d 285 (2010) (alteration in original) (internal quotation marks omitted) (quoting *Fay v. Noia*, 372 U.S. 391, 400, 83 S. Ct. 822, 9 L. Ed. 2d 837 (1963), *overruled in part on other grounds by Wainwright v. Sykes*, 433 U.S. 72, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977)). It is embedded in the common law. HORACE G. WOOD & CHARLES F. BRIDGE, A TREATISE ON THE LEGAL REMEDIES OF MANDAMUS AND PROHIBITION, HABEAS CORPUS, CERTIORARI, AND QUO WARRANTO 111 (3d ed. 1896) (citing *People ex rel. Tweed v. Liscomb*, 60 N.Y. 559 (1875)). "The writ of *habeas corpus* existed at common law prior to the promulgation of Magna Charta." *In re Habeas Corpus of Grieve*, 22 Wn.2d 902, 904, 158 P.2d 73 (1945). For much of our history, this court restricted its postconviction collateral review of final judgments to "but one question . . . [i]s this a judgment or a nullity?" without any consideration of the record. *Id.*

This seemed to be predicated on the principle that as habeas was a writ, relief was not available if there was an adequate remedy at law, such as an appeal. *In re Habeas Corpus of Cavitt*, 170 Wash. 84, 15 P.2d 276 (1932) (holding that habeas relief was available when trial judge sua sponte ordered man who had finished serving his sentence to serve it again). However, by case law, court rule, and ultimately, by statute, consideration of collateral challenges expanded. *See* LAWS OF 1989, ch. 395 (enacting a personal restraint petition statute);[2] *Holt v. Morris*, 84 Wn.2d 841, 843-45, 529 P.2d 1081 (1974) (reviewing expansion of judicial review and collateral relief since 1947), *overruled on other grounds by Wright v. Morris*, 85 Wn.2d 899, 540 P.2d 893 (1975). But this strict limitation on the scope of collateral review has long been in tension with concern about unlawful or unjustified detentions. In 1949, this court explicitly looked to the charging document when it was not possible to ascertain the charge from the judgment and sentence and found that the defendant had been sentenced for grand larceny after pleading guilty to petit larceny. *Sorenson v. Smith*, 34 Wn.2d 659, 661, 664, 209 P.2d 479 (1949). Over a sharp dissent that would have allowed the defendant to withdraw his plea and start over, the court granted relief and ordered resentencing.[3] For a brief time, by court rule, judges could order full evidentiary hearings whenever a collateral chal-

---

[2] The chief justice is correct that in our view, courts have from time to time considered extrinsic evidence in determining whether or not a judgment was valid upon a collateral challenge. *See, e.g., Holt v. Morris*, 84 Wn.2d 841, 844, 529 P.2d 1081 (1974) *overruled on other grounds by Wright v. Morris*, 85 Wn.2d 899, 540 P.2d 893 (1975). The legislature enacted RCW 10.73.090 against that backdrop, and given that it has not revised the statute since *Stoudmire*, we have no reason to think it is displeased with our approach.

[3] We respectfully disagree with the chief justice's characterization of *Sorenson* as holding the record could be examined only "*solely* for the purpose of determining that precise charge. *Sorenson v. Smith*, 34 Wn.2d 659, 209 P.2d 479 (1949); *see In re Habeas Corpus of Clark*, 24 Wn.2d 105, 112, 163 P.2d 577 (1945)." Concurrence (Madsen, C.J.) at 158. The most relevant language in *Sorenson* says:

Although we are not permitted in *habeas corpus* proceedings to examine the information where the judgment is regular on its face (*In re Grieve*, 22 Wn. (2d) 902, 158 P. (2d) 73 [(1945)]), still, when it is impossible to ascertain from the judgment the precise charge on which the petitioner was sentenced, it is

lenge " 'appears to have any basis in fact or law' " and relief could be granted if the court found " 'that the conviction was obtained . . . in violation of the Constitution of the United States or the Constitution or laws of the State of Washington,' " among other things. *Holt*, 84 Wn.2d at 847-48 (quoting former CrR 7.7(b), (g) (rescinded effective July 1, 1976)). This appears to have been the high water mark for the scope of collateral challenges.

¶8 Habeas corpus has also been a part of the fabric of Washington statutes for as long as we have existed as Washington. The very first territorial legislature enacted a generous habeas corpus act in 1854. LAWS OF 1854, §§ 434-456. It proudly proclaims that "[e]very person restrained of his liberty under any pretence whatever, may prosecute a writ of habeas corpus to enquire into the cause of the restraint, and shall be delivered therefrom when illegal." *Id.* § 434. One restrained could demand that his or her custodian prove that the restraint was lawful. *Id.* § 435. The court would "determine the cause, and if no legal cause be shown for the restraint . . . shall discharge the party." *Id.* § 444. However, this generous act for challenging most types of restraint was more restrictive when challenging restraints imposed by courts.[4] "No court or judge shall enquire into the legality of any judgment or process whereby the party is in

---

permissible for us to examine the judgment in connection with the record in which it is entered. *In re Clark*, 24 Wn. (2d) 105, 163 P. (2d) 577 [(1945)]. This is particularly so when not only the judgment but also the information is made a part of the return to the show cause order, as was done in this case.

The judgment recited that the petitioner was guilty of the crime of "Larceny by Check." There is no statute designating "Larceny by Check" a crime, and we therefore find it necessary to examine the information in order to ascertain what the charge actually was.

*Sorenson*, 34 Wn.2d at 661. *Sorenson* did not consider or hold whether ambiguity in the judgment and sentence as to the precise charge was the sole reason the record could be consulted. *Accord In re Habeas Corpus of Clark*, 24 Wn.2d 105, 112, 163 P.2d 577 (1945) ("The judgment must be read as a whole and in connection with the record of the cause in which it is entered, and if, when so read, it is not indefinite or uncertain, it is neither void nor voidable.").

[4] In modern times, we sometimes forget that habeas has long been available to challenge any sort of restraint. It has been used by slaves to challenge their bondage, and slave owners to demand the return of their slaves. *See* BADSHAH K. MIAN, AMERICAN HABEAS CORPUS: LAW, HISTORY, AND POLITICS 83-89 (1984); *see also Scott*

custody, or discharge him when the term of commitment has not expired . . . [u]pon any process issued on any final judgment of a court of competent jurisdiction." *Id.* § 445. This principle was reenacted by many subsequent legislatures. *See* LAWS OF 1869, § 617; CODE OF 1881, § 677; LAWS OF 1891, ch. 43, § 1; LAWS OF 1947, ch. 256, § 3. The courts and the legislature, while certainly not eliminating the judges' authority to issue writs of habeas corpus, have provided for judicial review and refined collateral challenges to court imposed sentences. Currently, a conviction may be collaterally challenged on any grounds for a year after it is final, though relief will be available only if the petitioner can meet other high burdens. RCW 10.73.090; *In re Pers. Restraint of Cook*, 114 Wn.2d 802, 810-12, 792 P.2d 506 (1990). After a year, a petitioner challenging a judgment and sentence that is "valid on its face and was rendered by a court of competent jurisdiction," RCW 10.73.090(1),[5] is limited to the six grounds enumerated in RCW 10.73.100.[6]

---

*v. Sandford*, 60 U.S. (19 How.) 393, 485-87, 15 L. Ed. 691 (1856), *superseded by constitutional amendment*, U.S. CONST. amend. XIV. It has been used by parents in custody disputes even in recent times. *See* MIAN, *supra*, at 81-83; *see generally* Paul J. Buser, *Habeas Corpus Litigation in Child Custody Matters: An Historical Mine Field*, 11 J. AM. ACAD. MATRIM. LAW 1 (1993).

[5] In most relevant part, RCW 10.73.090 says:

(1) No petition or motion for collateral attack on a judgment and sentence in a criminal case may be filed more than one year after the judgment becomes final if the judgment and sentence is valid on its face and was rendered by a court of competent jurisdiction.

(2) For the purposes of this section, "collateral attack" means any form of postconviction relief other than a direct appeal. "Collateral attack" includes, but is not limited to, a personal restraint petition, a habeas corpus petition, a motion to vacate judgment, a motion to withdraw guilty plea, a motion for a new trial, and a motion to arrest judgment.

[6] RCW 10.73.100 says:

The time limit specified in RCW 10.73.090 does not apply to a petition or motion that is based solely on one or more of the following grounds:

(1) Newly discovered evidence, if the defendant acted with reasonable diligence in discovering the evidence and filing the petition or motion;

(2) The statute that the defendant was convicted of violating was unconstitutional on its face or as applied to the defendant's conduct;

¶9 Among the peculiar characteristics of personal restraint petitions is the fact that they may be, and usually are, considered first by appellate courts, not by trial courts. RCW 10.73.090. Therefore, the normal standards of review (which show varying levels of deference to trial courts as the initial decision maker) do not apply. However, our review is still constrained. Relief by way of a collateral challenge to a conviction is extraordinary, and the petitioner must meet a high standard before this court will disturb an otherwise settled judgment. *Cook*, 114 Wn.2d at 810-12. Among other things, personal restraint petitioners who have had prior opportunity for judicial review must show that they were actually and substantially prejudiced by constitutional error or that their trials suffered from a fundamental defect of a nonconstitutional nature that inherently resulted in a complete miscarriage of justice. *In re Pers. Restraint of Elmore*, 162 Wn.2d 236, 251, 172 P.3d 335 (2007) (heightened standard); *In re Pers. Restraint of Isadore*, 151 Wn.2d 294, 299, 88 P.3d 390 (2004) (no prior opportunity for review); *Cook*, 114 Wn.2d at 810-12. If the personal restraint petition has been first considered by the Court of Appeals, this court will take review only if we are satisfied that review is warranted under RAP 13.4(b). Thus, the petitioner must persuade us that either the decision below conflicts with a decision of this court or another division of the Court of Appeals, that it presents a significant question of constitutional interest, or that it presents an issue of substantial public interest that should be

(3) The conviction was barred by double jeopardy under Amendment V of the United States Constitution or Article I, section 9 of the state Constitution;

(4) The defendant pled not guilty and the evidence introduced at trial was insufficient to support the conviction;

(5) The sentence imposed was in excess of the court's jurisdiction; or

(6) There has been a significant change in the law, whether substantive or procedural, which is material to the conviction, sentence, or other order entered in a criminal or civil proceeding instituted by the state or local government, and either the legislature has expressly provided that the change in the law is to be applied retroactively, or a court, in interpreting a change in the law that lacks express legislative intent regarding retroactive application, determines that sufficient reasons exist to require retroactive application of the changed legal standard.

decided by this court. RAP 13.5A(a)(1), (b); RAP 13.4(b). Once we have accepted review, we review pure questions of law de novo and the question of deference to the Court of Appeals does not arise. *1000 Friends of Wash. v. McFarland*, 159 Wn.2d 165, 172, 149 P.3d 616 (2006) (citing *Lybbert v. Grant County*, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000)). However, our respect for settled judgments remains.

¶10 In this case, our review is somewhat hampered because Coats has not briefed whether the error he complains of is, in his view, constitutional or not. We acknowledge that we have not been entirely consistent in requiring petitioners claiming facial invalidity to establish the type of error and requisite prejudice. *Compare, e.g.*, *In re Pers. Restraint of Hinton*, 152 Wn.2d 853, 858-59, 100 P.3d 801 (2004) (citing *Isadore*, 151 Wn.2d at 298) (requiring actual showing of prejudice before granting relief based on an invalid judgment and sentence), *with In re Pers. Restraint of Stoudmire*, 141 Wn.2d 342, 353, 5 P.3d 1240 (2000) (granting relief without considering whether the petitioner was prejudiced). However, this is simply an artifact of the fact that in the cases where we have found facial invalidity, the error was often so striking that the State simply did not challenge whether relief was appropriate. Petitioners would be well advised to specifically brief the question.

## FACIAL VALIDITY

¶11 Coats contends that his judgment and sentence is invalid on its face because it misstates the maximum sentence on one of the three charges. We have used the phrases "facial validity" and "facial invalidity" as shorthand when a judgment and sentence is (or is not) "valid on its face," but neither is the actual operative statutory phrase.[7]

---

[7] The first time this court used a variation on the phrase "facial invalidity" in the context of a collateral challenge to a conviction was in 1986, in a brief per curiam opinion applying our then-recent, seminal opinion, *State v. Ammons*, 105

Under Coats's theory of collateral review, " 'facial invalidity' . . . alone does not merit relief. It only serves as a gateway—making an otherwise untimely petition timely." Suppl. Br. at 7. In his view, "[w]hen a judgment reveals an infirmity 'on its face,' the reviewing court can then look to other documents to determine whether there is 'fundamental defect which inherently results in a complete miscarriage of justice.' " *Id.* (quoting *In re Pers. Restraint of Thompson*, 141 Wn.2d 712, 719, 10 P.3d 380 (2000)). Put another way, in Coats's view, the error on his judgment and sentence allows him to bring an otherwise untimely challenge to his guilty plea. Coats also argues that we have never required a showing of prejudice, as the harm flows from the invalidity of the judgment alone.

¶12 In essence, it is Coats's view that an error in the judgment and sentence permits him to circumvent other carefully crafted time limits on collateral review. We disagree, but his confusion is understandable. Determining whether a judgment and sentence is invalid on its face and not subject to the one-year time bar has long troubled this court. Our jurisprudence has developed case by case. The term "valid on its face" does not itself illuminate its meaning. In addressing the cases before us, we have not found it necessary in the past, nor do we now, to articulate an unyielding definition, and we hesitate to do so given the rich and complicated history of collateral challenges.

---

Wn.2d 175, 713 P.2d 719, 718 P.2d 796 (1986). The defendant had challenged his offender score and, among other things, we held that "the State need not prove the constitutional validity of prior guilty pleas, though a *facially invalid* plea cannot be used." *State v. Binder*, 106 Wn.2d 417, 419, 721 P.2d 967 (1986) (emphasis added). Two years later, we used the term in a personal restraint petition decision, again in the context of a challenge to a defendant's offender score. *In re Pers. Restraint of Williams*, 111 Wn.2d 353, 368, 759 P.2d 436 (1988) ("Unless the convictions are *facially invalid*, it is presumed that a defendant's silence when his or her convictions are introduced means that they are proper to use for sentencing purposes." (emphasis added)). It appears that the first time we used a variation on the phrase in the context of a collateral challenge to a conviction under RCW 10.73.090 was in 2001, in *In re Pers. Restraint of Stoudmire*, 145 Wn.2d 258, 265, 36 P.3d 1005 (2000) ("An alternative argument made by Stoudmire is that the conviction is *facially invalid*." (emphasis added)).

However, we do take this opportunity to summarize our jurisprudence.

A. *What Makes a Sentence Invalid*

¶13  First, to avoid RCW 10.73.090's one-year time bar on challenging judgments that are valid on their face, the error must render the judgment and sentence "invalid." Not every error renders a judgment and sentence "invalid." *See, e.g., McKiearnan*, 165 Wn.2d at 783. Mere typographical errors easily corrected would not render a judgment invalid. Similarly, errors in fact such as a date or place would not necessarily render a judgment invalid. *Id.* But, argues Coats, any error of law such as an error concerning the maximum sentence converts an otherwise valid judgment into an invalid one.

¶14  However, a careful review of our cases reveals that we have found errors rendering a judgment invalid under RCW 10.73.090 only where a court has in fact exceeded its statutory authority in entering the judgment or sentence. For example, we have found judgment and sentences invalid when the trial judge has imposed an unlawful sentence. We found invalidity when the offender has been given a longer sentence than the statutory maximum authorized by law. *In re Pers. Restraint of Tobin*, 165 Wn.2d 172, 176, 196 P.3d 670 (2008) (sentence exceeded statutory maximum; remanded for resentencing within the standard range). We found facial invalidity on the judgment and sentences of offenders convicted of nonexistent crimes in *Hinton*, 152 Wn.2d at 857. *Accord Thompson*, 141 Wn.2d at 719 (judgment and sentence invalid when defendant pleaded guilty to "an offense which was not criminal at the time he committed it").

¶15  Similarly, we found invalidity when an offender agreed to serve a 10 year exceptional sentence on a lesser crime, with no reduction for earned early release time, in exchange for the prosecution reducing the charge from a third strike offense, and the trial judge memorialized the

agreement on the judgment and sentence. *In re Pers. Restraint of West*, 154 Wn.2d 204, 206-07, 110 P.3d 1122 (2005). However reasonable the bargain was, the trial judge lacked the statutory authority to direct whether an offender would or would not earn early release. We found that the judgment and sentence was thus invalid and remanded for deletion of the offending clause. *Id.* at 215-16. In another case, we found that a judgment and sentence was invalid when it was plain that the trial judge had miscalculated the petitioner's offender score and sentenced the offender based on a washed out prior offense. *In re Pers. Restraint of LaChapelle*, 153 Wn.2d 1, 6, 100 P.3d 805 (2004). Again, we remanded for resentencing. *Id.* at 14. We found the judgment and sentence in *Stoudmire*, 141 Wn.2d at 353, to be facially invalid because it purported to memorialize a lawful conviction of a man who had been charged with a crime after the statute of limitations had run. In that case, we vacated the unlawful convictions and remanded for resentencing on the remaining charges. *Id.* at 356-57.[8]

¶16 Thus, we have regularly found facial invalidity when the court actually exercised a power it did not have. However, we have never found a judgment invalid merely because the error invited the court to exceed its authority when the court did not in fact exceed its authority. Only where the judgment and sentence was entered by a court without the authority to do so have we held the judgment invalid.

¶17 Coats notes that "[s]entencing provisions outside the authority of the trial court have historically been described as 'illegal' or 'invalid.'" Suppl. Br. at 3 (quoting *State v. Smissaert*, 103 Wn.2d 636, 639, 694 P.2d 654 (1985)). Citing *Smissaert*, he suggests that an invocation of an invalid or illegal power is enough to render a judgment facially invalid. *Id.* The citation is not well taken. *Smissaert* was

---

[8] The Chief Justice's concurrence suggests that we should overrule *Stoudmire* and its progeny. Concurrence (Madsen, C.J.) at 160. As the parties have not briefed that issue, we decline to consider it.

convicted of first degree murder. 103 Wn.2d at 638. Under the old indeterminate sentencing schema, the trial judge sentenced Smissaert to a maximum of 20 years in prison. Smissaert did not appeal, and some years later, the Board of Prison Terms and Paroles informed the court that it had erred and Smissaert should have been given a life sentence. *Id.* The trial court corrected the judgment nunc pro tunc, and Smissaert promptly appealed. The Court of Appeals held that Smissaert had waived his right to appeal by not challenging the original judgment and sentence. *Id.* This court reversed, holding that while the trial court had the "power and duty to correct an erroneous sentence," it should not have corrected the judgment nunc pro tunc, effectively depriving Smissaert of his constitutional right to appeal. *Id.* at 639, 643. But *Smissaert* was not, properly speaking, a collateral review case. It was a timely challenge to a trial court's judgment and sentence, albeit one that the trial judge had attempted to backdate. Furthermore, like the cases surveyed above, Smissaert's judgment and sentence showed the judge exercised an authority he did not have: to actually render a sentence the law did not allow. It does not stand for the proposition that any error on the face of the judgment and sentence opens the door to an otherwise time barred challenge.

¶18 Coats suggests that under *In re Personal Restraint of Bradley*, 165 Wn.2d 934, 205 P.3d 123 (2009), an error on the face of the judgment and sentence removes the time bar and allows the petitioner to raise otherwise untimely claims. It is true that as a matter of fact, that is what Bradley was allowed to do. But that was not because this court so held that it was an artifact of the issues the State chose to litigate. As we noted, "The State . . . appear[ed] to concede that the miscalculation [of the offender score] resulted in a facial invalidity on Bradley's judgment and sentence, allowing him to avoid the one-year time bar." *Id.* at 938-39. We accepted that apparent concession and we turned to the issues actually presented by the parties:

whether Bradley's plea was involuntary when he was misinformed of the maximum sentence on one of the lesser charges (but not of the total he faced) and what the appropriate remedy would be. *Bradley* did not consider and, therefore, did not establish, whether an error on the face of the judgment and sentence in fact acted to waive the time bar. "Because we are not in the business of inventing unbriefed arguments for parties sua sponte, there certainly was no significance in our not doing so." *State v. Studd*, 137 Wn.2d 533, 547, 973 P.2d 1049 (1999); *see also Alverado v. Wash. Pub. Power Supply Sys.*, 111 Wn.2d 424, 429, 759 P.2d 427 (1988) (describing when the court may choose to raise issues the parties did not). In contrast, the State emphatically makes no such concession in the case at bar. *See* Suppl. Br. of Resp't at 3-9. Like any other case, *Bradley* stands for the propositions it established, not for the propositions conceded by the parties.[9]

B. *What Does "On Its Face" Mean?*

¶19 Second, the judgment and sentence must be valid "on its face." "On its face" modifies "valid." Put another way, for the petitioner to avoid the one-year time bar, he or she must show that the judgment and sentence is "facially invalid." *LaChapelle*, 153 Wn.2d at 6 (citing *In re Pers. Restraint of Goodwin*, 146 Wn.2d 861, 865-67, 50 P.3d 618 (2002)). Since at least 1947, we have not limited our review to the four corners of the judgment and sentence. *See generally Holt*, 84 Wn.2d at 843-45. But we have considered only documents that reveal some fact that shows the

---

[9] We respectfully disagree with Justice Stephens's characterization of our opinion as holding that "our precedent requires a showing of harm or prejudice to the petitioner in order to demonstrate a facial invalidity in the first instance." Concurrence (Stephens, J.) at 163. In our view, the question of prejudice is separate from the question of validity, though of course they may turn on the same facts in a particular case.

judgment and sentence is invalid on its face because of legal error. *See, e.g., Goodwin*, 146 Wn.2d at 866 n.2, 872.[10]

¶20 The court has looked beyond the face of the judgment and sentence to determine facial invalidity on several occasions. In *Stoudmire*, 141 Wn.2d at 346, the defendant pleaded guilty to two counts of indecent liberties, among other things. More than a year after his convictions became final, he challenged the indecent liberties convictions on the ground that the statute of limitations had run when he was charged, again among other things. *Id.* This court looked to the information, saw that the statute of limitations had run when the indecent liberties counts were charged, found the judgment and sentence not valid on its face as to those convictions, and vacated those convictions. *Id.* at 354. In *Thompson*, 141 Wn.2d at 716, the petitioner had pleaded guilty to rape of a child under a statute that was not enacted until two years after the charged conduct. We again looked to the information, as well as the defendant's statement on plea of guilty, to find the charging date and the date of the alleged conduct and vacated without prejudice to refiling the charges under the correct statute. *Id.* at 717, 730. In *Hinton*, the petitioners had been convicted of felony murder predicated on assault before the time we found that theory of the case unsustainable under the statute as written, and therefore the petitioners had been "convicted of a nonexistent crime." *Hinton*, 152 Wn.2d at 856-57 (citing *In re Pers. Restraint of Andress*, 147 Wn.2d 602, 56 P.3d 981 (2002)). Their convictions were vacated. *Id.* at 861. In *West*, 154 Wn.2d at 209, we looked to the defendant's waiver of earned early release time as condition of plea agreement to illuminate a handwritten notation on the judgment and

---

[10] While not presented in this case, we note in passing we have held a miscalculated offender score renders a sentence invalid and may be challenged in a personal restraint petition at any time. *Goodwin*, 146 Wn.2d at 867, 873-74 (noting "that a sentence in excess of statutory authority is subject to collateral attack, that a sentence is excessive if based upon a miscalculated offender score . . . and that a defendant cannot agree to punishment in excess of that which the Legislature has established").

sentence, but our decision that the judgment and sentence was not valid on its face rested only on the judgment and sentence itself. *See also LaChapelle*, 153 Wn.2d 1; *Goodwin*, 146 Wn.2d at 866-68. We remanded for correction. *West*, 154 Wn.2d at 216; *accord Tobin*, 165 Wn.2d at 176 (remanded for correction when the sentence exceeded the statutory maximum). In *McKiearnan*, 165 Wn.2d at 783, we did consider the offered plea agreement, which, like the judgment and sentence, showed the petitioner had been misinformed of the statutory maximum, but we found that the actual standard range sentence was valid on its face. Finally, in *Bradley*, 165 Wn.2d at 942, we considered the defendant's statements on pleas of guilty.

¶21 Taken together, we have found invalidity based upon charging documents, verdicts, and plea statements of defendants on plea of guilty. We have not rested our decision on jury instructions, trial motions, and other documents that relate to whether the defendant received a fair trial.[11]

¶22 Defendants have a right to a constitutionally fair trial. The defendants' right to a fair trial is protected by a right of direct appeal. After the right of appeal has been exhausted and the appeal is final, the defendant is afforded the additional right to collateral review by a personal restraint petition. This right, however, is not unlimited. It requires the petitioner to make a heightened showing of prejudice, among many other things. *Cook*, 114 Wn.2d at 810-12. Personal restraint petitions based upon most claimed errors made at trial by the judge, such as jury instructions and rulings on evidence and motions, must be brought within the one-year time limit prescribed by RCW 10.73.090. We have not referred to trial rulings, motions, or jury instructions when they reflect on fair trial issues and

---

[11] We recognize that *Hinton* referenced jury instructions, but the case did not turn on what documents could be consulted to determine facial invalidity. *Hinton*, 152 Wn.2d at 858; *see also West*, 154 Wn.2d at 206-07. *Hinton* should not be read to suggest that defects in jury instructions can render a judgment not valid on its face. Such errors must be raised in a timely appeal, personal restraint petition, or fit within an RCW 10.73.100 exception.

not the validity of the judgment and sentence.[12] The exception for facially invalid judgments and sentences may not be used to circumvent the one-year time bar to personal restraint petitions relating to fair trial claims. A claim that the judgment is not valid on its face may not be used to make an end run around the time limit and a personal restraint petition.

¶23 Similarly, we have found an involuntary plea does *not* render a judgment and sentence facially invalid. *In re Pers. Restraint of Clark*, 168 Wn.2d 581, 586-87, 230 P.3d 156 (2010); *In re Pers. Restraint of Hemenway*, 147 Wn.2d 529, 532, 55 P.3d 615 (2002). Hemenway contended he pleaded guilty without being told that as a direct consequence of his plea, he would serve mandatory community placement. *Hemenway*, 147 Wn.2d at 531. As an accused is entitled to know all the direct consequences of a plea, Hemenway contended that his plea was not knowing, voluntary, and intelligent and, critically for our purposes, that the invalidity of the plea infected the judgment and sentence. *Id.* (citing *State v. Ross*, 129 Wn.2d 279, 916 P.2d 405 (1996)); *see also id.* at 533 (Chambers, J., dissenting). If Hemenway had raised that challenge in a timely personal restraint petition, he likely would have prevailed. S*ee, e.g., Isadore*, 151 Wn.2d at 298 (noting, in a timely challenge, that a defendant not informed of the direct consequences of a plea must be allowed to withdraw it). But this court rejected Hemenway's argument that he was entitled to the same relief in an untimely collateral challenge. As we noted, "The question is not, however, whether the plea documents are facially invalid, but rather whether the judgment and sentence is invalid on its face. The plea documents are relevant only where they may disclose invalidity in the judgment and sentence." *Hemenway*, 147 Wn.2d at 533 (footnote omitted). This principle was bluntly recapitulated in *McKiearnan*: "an invalid plea agreement cannot on its

---

[12] We recognize that we have referenced other documents in dicta, e.g., *Hinton*, but such documents will be helpful in only the rarest of circumstances.

own overcome the one year time bar or render an otherwise valid judgment and sentence invalid." *McKiearnan*, 165 Wn.2d at 782. In short, we may examine a plea statement to evaluate a claim that a judgment and sentence is not valid on its face, but not the other way around.

## PREJUDICE

¶24 Aware, perhaps, that he will be hard-pressed to meet this standard, Coats suggests that this court "has never held that harm or prejudice must flow from the error or facial invalidity on the judgment alone." Suppl. Br. at 6. It is true that historically, we have not consistently analyzed whether or not the petitioner has shown sufficient prejudice before granting relief based on personal restraint petitions that avoid the time bar based on facially invalidity. *Compare, e.g., Hinton*, 152 Wn.2d at 858-59 (both requiring actual showing of prejudice before granting relief based on an invalid judgment and sentence) (citing *Isadore*, 151 Wn.2d at 298), *with Stoudmire*, 141 Wn.2d 342 (granting relief without considering whether the petitioner was prejudiced). *See also Goodwin*, 146 Wn.2d at 876-77 (applying "miscarriage of justice" standard); *Thompson*, 141 Wn.2d at 719 (same). However, where we have found facial invalidity without examining prejudice, the error was often so striking that the State focused its arguments on whether the error could be reached and simply did not challenge whether relief was appropriate if we did so. Where the court exceeded its authority by sentencing for a crime that did not exist or for which the defendant was never charged, the prejudice has been so obvious that extensive (or sometimes any) discussion of prejudice was unnecessary. *Thompson*, 141 Wn.2d at 719; *see also Stoudmire*, 141 Wn.2d 342. We can find no case—and the petitioner has directed us to none—where we have actually *held* that prejudice need not be shown. While we tend to agree with Justice Stephens that actual and substantial prejudice must be shown before relief is appropriate due to an error on the face of a

judgment and sentence, given our resolution of this case, the question is not before us.

### Coats's Judgment and Sentence

¶25 With these principles in mind, we turn to Coats's contention that the judgment and sentence was facially invalid. Coats is correct that his judgment and sentence contains an error. It misstated the maximum possible sentence for conspiracy to commit robbery as life when, in fact, the maximum sentence for that crime is 10 years. There is a defect in the judgment and sentence. But as we have discussed above, not every error renders a judgment and sentence invalid. Only where the court has erred by exceeding its authority has this court found the error rendered the judgment and sentence invalid.[13] Coats pleaded guilty to first degree robbery, conspiracy to commit first degree robbery, and conspiracy to commit first degree murder to take advantage of the State's offer to drop three serious charges and, apparently, make a standard range sentencing recommendation, which the trial judge followed. Coats does not challenge the jurisdiction of the court and did not appeal. While the judgment and sentence misstated the maximum possible sentence for one count, Coats was in fact sentenced within the standard range of possible sentences for that offense. The court did not exceed its authority and the judgment and sentence is not facially invalid. Therefore, Coats's petition is time barred.

## CONCLUSION

¶26 There was an error in Coats's judgment and sentence. But not every defect renders a judgment and

---

[13] We respectfully disagree with the factual predicate underlying the chief justice's statement that "[t]he trial court erred in imposing a sentence with a maximum sentence in excess of that which is authorized and this invalidity appears on the face of the judgment and sentence." Concurrence (Madsen, C.J.) at 162. The trial judge did not impose a sentence in excess of that authorized.

sentence invalid. When squarely presented, we have found only errors that result from a judge exceeding the judge's authority to render a judgment and sentence facially invalid. The court did not exceed its authority. Further, the "not valid on its face" limitation of RCW 10.73.090 is not a device to make an end run around the one-year time bar for most errors, including errors at trial that affect a fair trial. We will examine limited documents to determine if an error in a judgment and sentence is "on its face" but those documents must reflect an error on the judgment and sentence. An error in the judgment and sentence does not render a plea involuntary.

¶27 Coats's judgment and sentence is valid on its face. Although not an error rendering the judgment and sentence "not valid on its face," there was an error in Coats's judgment and sentence and we remand to the trial court to correct the error under CrR 7.8(a).

C. JOHNSON, ALEXANDER, OWENS, J.M. JOHNSON, and WIGGINS, JJ., concur.

¶28 MADSEN, C.J. (concurring) — This case presents an ideal opportunity to clarify the meaning of RCW 10.73-.090(1). The statute's plain language, "valid on its face," and the historical meaning of those words, which I discuss below, lead to one conclusion: in order to avoid the one year bar on collateral attack, the claimed defect must be a defect in the judgment and sentence and it must appear on the face of the judgment and sentence itself.

¶29 In some recent cases, this court has relied on ad hoc determinations of what RCW 10.73.090(1) means, and in each case the meaning has been dependent on the particular facts of the case. Regrettably, the majority does nothing to resolve this problem and in fact perpetuates this ad hoc approach by expressly refusing to give any fixed meaning to the statute.

¶30 We have a duty to interpret statutes and the rules we have promulgated when their meaning is in question. Vagueness and imprecision are not helpful to those who must attempt to apply the statute, whether petitioners or respondents, whether counsel or the courts. Explaining only how the statute has played out in prior cases, as the majority does, is of little use in providing guidance as to how the statute should be applied across a range of circumstances. This perpetuates a situation where a flood of personal restraint petitions must be considered in detail despite the heavy burden this places on the courts and the obvious purposes of the statute to restrict and manage the flow of personal restraint petitions.

¶31 The majority raises other serious concerns as well. The majority conflates the issue whether the one-year time bar of the statute applies with the issue of whether a petitioner has established requisite prejudice entitling the petitioner to relief from restraint. Equally serious, the majority seems to think that RCW 10.73.090(1) substantively governs whether a petitioner is entitled to relief. The statute is, of course, a *procedural* bar, not a *substantive* bar.

¶32 Finally, as Justice Stephens' concurrence explains, the majority fails to provide any meaningful discussion of the petitioner's main contention—that once the one-year time bar of RCW 10.73.090(1) is avoided as to one claim, it is automatically avoided as to all claims asserted by the petitioner. Fortunately, the concurrence explains why this is an improper interpretation of the statute.

¶33 Turning briefly to that concurrence, I agree with its analysis in most respects. But like the majority, the concurrence fails to adequately explain what RCW 10.73.090(1) means.

¶34 This case provides the opportunity for this court to interpret RCW 10.73.090(1), in context, and on its face. Because neither the majority nor Justice Stephens' concurrence does this, I write separately to urge that we correct our previously mistaken, ad hoc approach to determining

whether a judgment and sentence is invalid on its face. Focused as it is on the meaning of RCW 10.73.090(1), this case presents a good vehicle for addressing this issue.

¶35 In language, purpose, and context, RCW 10.73-.090(1) is a blanket prohibition against considering the merits of a personal restraint petition filed more than one year after a judgment is final, if the judgment and sentence is valid on its face and the petition is not based on grounds identified in RCW 10.73.100. But instead of applying this provision according to its plain language, we have frequently and mistakenly looked behind the face of a judgment and sentence in order to determine whether it is valid. A course correction is necessary.

¶36 Because it is the starting point in this case, I first turn to RCW 10.73.090(1) to explain how and why it should be applied according to its plain language.

Discussion

¶37 RCW 10.73.090(1) states:

No petition or motion for collateral attack on a judgment and sentence in a criminal case may be filed more than one year after the judgment becomes final if the judgment and sentence is valid on its face and was rendered by a court of competent jurisdiction.

We have historically questioned the power of the legislature to dictate the scope of our review of petitions for collateral relief in criminal cases. *See Holt v. Morris*, 84 Wn.2d 841, 844, 529 P.2d 1081 (1974), *overruled in part on other grounds by Wright v. Morris*, 85 Wn.2d 899, 540 P.2d 893 (1975); *In re Pers. Restraint of Stoudmire*, 141 Wn.2d 342, 351-52, 5 P.3d 1240 (2000), *overruled in part by In re Pers. Restraint of Turay*, 153 Wn.2d 44, 101 P.3d 854 (2004). However, because we have expressly incorporated the provisions of RCW 10.73.090 and .100 into our Rules for Appellate Procedure, this issue does not arise insofar as these particular statutes are concerned. RAP 16.4(d). The

question then becomes what do these statutes, and in particular RCW 10.73.090(1), mean?

¶38 The meaning of "valid on its face" in RCW 10.73-.090(1) is a matter of statutory or rule construction under familiar guidelines.[14] The goal when construing a statute is to discover and carry out the legislature's intent. *State v. Marohl*, 170 Wn.2d 691, 698, 246 P.3d 177 (2010). If the statute's language is plain on its face, we give effect to that language as a statement of the legislative intent. *State v. Hirschfelder*, 170 Wn.2d 536, 543, 242 P.3d 876 (2010).[15]

¶39 RCW 10.73.090(1) uses plain language that has a plain meaning. "Valid on its face" means there must be invalidity in the judgment and sentence. The majority and Justice Stephens conclude that the type of invalidity with which the statute is concerned occurs when a judgment and sentence is in excess of the trial court's authority. I agree with this conclusion, which essentially is that the judgment is not one that the court had authority to render or the sentence was imposed in excess of or without authority.

¶40 The more troublesome aspect of the statute is its command that the invalidity appear "on the face" of the judgment and sentence. This is the statutory language that the majority fails to define and erroneously applies, and that Justice Stephens' concurrence ignores.

¶41 As we recently stated, RCW 10.73.090(1) is not ambiguous. *In re Pers. Restraint of Skylstad*, 160 Wn.2d 944, 947, 162 P.3d 413 (2007). The term "valid on its face"

---

[14] Although RCW 10.73.090 and .100 control by virtue of this court's incorporation of these statutes into RAP 16.4(d), whether, in the context here, interpretation of the statutes is perceived as a matter of statutory construction or in part as construction of a court rule makes no difference. Interpretation of statutes and court rules rests on the same principles of statutory construction. *City of Seattle v. Holifield*, 170 Wn.2d 230, 237, 240 P.3d 1162 (2010).

[15] The plain meaning of a statute is discerned from the ordinary language of the provision at issue, the context of the statute in which the provision is found, related statutes, and the statutory scheme as a whole. *State v. Jacobs*, 154 Wn.2d 596, 600, 115 P.3d 281 (2005); *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 W.2d 1, 9, 43 P.3d 4 (2002).

means that the judgment and sentence evidences invalidity without further elaboration. *In re Pers. Restraint of Hemenway*, 147 Wn.2d 529, 532, 55 P.3d 615 (2002); *In re Pers. Restraint of Goodwin*, 146 Wn.2d 861, 866, 50 P.3d 618 (2002). This means that the invalidity must appear on the face of the judgment and sentence, i.e., it must be discernable from the face of the document itself.

¶42 But having appropriately held that the meaning of the statute is plain and limits a court to looking to the judgment and sentence itself, we have ignored this holding and considered various other documents to determine whether the judgment and sentence is invalid for a reason not apparent from the face of the document. Instead of a rule of "no further elaboration," we have employed a rule of "with further elaboration." In *Stoudmire*, 141 Wn.2d at 354, and *In re Personal Restraint of Thompson*, 141 Wn.2d 712, 719, 10 P.3d 380 (2000), for example, we examined documents signed as part of plea agreements to determine facial invalidity. In *Hemenway*, 147 Wn.2d at 532-33, we explained that such plea documents are relevant insofar as they may disclose invalidity of the judgment and sentence. Building upon the error in *Stoudmire*, we have ignored the plain language of the statute by expanding our inquiry beyond the face of the document.

¶43 As we accurately stated in a recent case, if a petitioner "must resort to external documents in the hope of rendering his judgment and sentence invalid, then the judgment and sentence cannot be invalid on its face." *In re Pers. Restraint of Clark*, 168 Wn.2d 581, 588, 230 P.3d 156 (2010).

¶44 Nonetheless, the majority is satisfied with continuing to apply RCW 10.73.090(1), not according to its plain language, but according to how it has been applied in our previous cases. The majority posits that at least since 1947 we have expanded review to include documents other than the judgment and sentence that disclose invalidity in the judgment and sentence. Majority at 138-40. The majority

evidently seems to think that under RCW 10.73.090(1) consideration of sources outside the judgment and sentence is merely a continuation of this approach.

¶45 This is inaccurate. RCW 10.73.090(1), enacted in 1989, is the first time this state has implemented a time bar to consideration of personal restraint petitions. *See* LAWS OF 1989, ch. 395, §§ 1-2. Our obligation is to interpret these statutes as they are incorporated in our court rules.

¶46 Normally, when faced with a question about the meaning of a statute we go no further than the words of the statute when those words are plain and unambiguous. *Christensen v. Ellsworth*, 162 Wn.2d 365, 373, 173 P.3d 228 (2007). However, given that we have already disregarded the plain-meaning rule in regard to this particular statute, I believe it is useful to consider the purpose of the statute and the history of time limits for petitions for collateral relief in criminal cases. These considerations, like the plain language of the statute, indicate that we have improperly disregarded the intent behind RCW 10.73.090(1) and the related provisions in RCW 10.73.100.

¶47 Turning to the purposes of the statute, it is unnecessary to give RCW 10.73.090(1) an interpretation any broader than suggested by its plain language in order to carry out the purposes of the statute. That is, there is no need to construe the statute to protect a petitioner's ability to challenge a judgment and sentence that suffers from some error that is not apparent on the face of the document. To the contrary, the purposes of the statute are best served if it is construed to require that a claimed defect in the judgment and sentence be apparent on the face of these documents.

¶48 "The purpose underlying the time limit in RCW 10.73.090 is to manage the flow of post-conviction collateral relief petitions by requiring collateral attacks to be brought promptly. Limiting attacks to a one-year period, except in instances provided in RCW 10.73.100, also promotes finality of judgments." *In re Pers. Restraint of Bonds*, 165 Wn.2d

135, 141, 196 P.3d 672 (2008); *see Shumway v. Payne*, 136 Wn.2d 383, 399, 964 P.2d 349 (1998). "[C]ollateral relief ' "undermines the principles of finality of litigation, degrades the prominence of the trial, and sometimes costs society the right to punish admitted offenders." ' " *Shumway*, 136 Wn.2d at 399 (quoting *In re Pers. Restraint of Cook*, 114 Wn.2d 802, 809, 792 P.2d 506 (1990) (quoting *In re Pers. Restraint of Hews*, 99 Wn.2d 80, 86, 660 P.2d 263 (1983))).

¶49 These purposes necessarily contemplate that collateral attacks that might have been successful if brought in a timely manner will instead fail. However, even with the absolute time bar, personal restraint petitions that involve certain types of claims are exempt from the one-year time bar. *See* RCW 10.73.100. "Faced with a virtually unlimited universe of possible postconviction claims, the Legislature wisely chose to exempt those contentions which go to the very validity of the prisoner's continued incarceration." *In re Pers. Restraint of Runyan*, 121 Wn.2d 432, 449, 853 P.2d 424 (1993). In directing that no time bar applies with respect to certain specified claims, the legislature assured the constitutionality of the statutes under the state constitution's suspension clause. *Id.* at 444. It also contemplates collateral relief beyond that which is constitutionally required, " 'situations which affect the continued validity and fairness of the petitioner's incarceration.' " *In re Pers. Restraint of Greening*, 141 Wn.2d 687, 695, 9 P.3d 206 (2000) (emphasis omitted) (quoting *Runyan*, 121 Wn.2d at 445). The grounds in RCW 10.73.100 that are exempt from the time limit are very broad, encompassing serious constitutional infirmities and later developments that bring the validity of continued detention into question. *Runyan*, 121 Wn.2d at 445.

¶50 The statute thus restricts the stream of personal restraint petitions but does not prevent a petitioner from pursuing collateral relief where circumstances set out in RCW 10.73.100 exist. In other words, the petitioner is not

prevented by RCW 10.73.090(1) from petitioning for relief if the ground comes within the exemptions in RCW 10.73.100. If not, then the petitioner is still free to petition for relief provided he or she does so in a timely fashion; and if the judgment and sentence is not valid on its face, it is subject to challenge more than one year after the judgment is final. Thus, RCW 10.73.090(1) and .100 do not establish any substantive bars to collateral relief. RCW 10.73.090(1) is a procedural bar.

¶51 The purposes of RCW 10.73.090(1), like its plain language, weigh in favor of applying RCW 10.73.090(1) exactly according to its terms, without resort to any other part of the record in a petitioner's case that might disclose some error in the defendant's conviction or sentence. Implementing the plain language of the statute provides the certainty that is necessary for efficient management of the flow of personal restraint petitions. Courts can readily give effect to the legislature's purpose to dispense with petitions that do not meet the requirements of the statute. Moreover, adhering to the statute's plain language serves the goal of finality by consistently and uniformly applying the statute's fixed time period in which to bring a personal restraint petition. When, instead, courts must look behind the faces of judgments and sentences in criminal cases, the result is a logjam of petitions that require evaluation of legal arguments and the record—serving neither the goal of managing the flow of personal restraint petitions nor the goal of finality.

¶52 The history of time limits for petitions or motions for collateral relief in criminal cases also favors applying the statute as written. With regard to collateral attacks on judgments in criminal proceedings, history gives contextual meaning to what types of judgments and sentences have been considered without any time limits as well as what it means for a judgment and sentence to be "invalid on its face."

¶53 The first time that RCW 10.73.090(1) came before us for interpretation was in *Runyan*, 121 Wn.2d 432, where the

principal claim was that the one-year time bar in RCW 10.73.090(1) violated the suspension clause of the Washington State Constitution. CONST. art. I, § 13.[16] This challenge caused the court to consider petitions for writs of habeas corpus as they existed at the time Washington became a state because the origins of personal restraint procedures are found in habeas corpus proceedings. *In re Pers. Restraint of Hagler*, 97 Wn.2d 818, 823, 650 P.3d 1103 (1982).

¶54 The issue in *Runyan* was whether, in imposing a one-year time limit for personal restraint petitions valid on their face, RCW 10.73.090(1), with the exceptions in RCW 10.73.100, conflicted with the right protected by our state constitution's suspension clause. We explained, as early cases had held, that the right to postconviction relief protected by the suspension clause was the same as the right to petition for a writ of habeas corpus at common law, itself embodied in the first state statute, carried over from territorial days, that governed petitions for writs of habeas corpus. *Runyan*, 121 Wn.2d at 441-43.

¶55 At common law, that *"the petitioner was held by any process or judgment good upon its face not only precluded inquiry into the validity of such process or judgment, but also precluded inquiry as to the facts of his being held by such process or judgment at all."* In re Habeas Corpus of *Lybarger*, 2 Wash. 131, 134, 25 P. 1075 (1891) (emphasis added). In *Lybarger* the court examined the state statute, on the books since 1854, that barred a court from inquiring into the legality of the judgment or process of any court of competent jurisdiction, and held the scope under the statute was the same as at common law. *Id.* at 132. Further, it

---

[16] "The privilege of the writ of habeas corpus shall not be suspended, unless in case of rebellion or invasion the public safety requires it." CONST. art. I, § 13; *see* CONST. art. IV, § 4 ("The supreme court shall have original jurisdiction in habeas corpus [and] shall also have power to issue writs of . . . habeas corpus . . . . Each of the judges shall have power to issue writs of habeas corpus to any part of the state upon petition by or on behalf of any person held in actual custody, and may make such writs returnable before himself, or before the supreme court, or before any superior court of the state or any judge thereof.").

was the same right protected under the state's suspension clause. *Id.* at 135-36. These principles were reiterated in later cases. *See, e.g., In re Habeas Corpus of Grieve*, 22 Wn.2d 902, 904, 158 P.2d 73 (1945); *Palmer v. Cranor*, 45 Wn.2d 278, 280, 273 P.2d 985 (1954).

¶56 The scope of the right was very narrow; it was not a substitute for an appeal and was not available to challenge any and all sentences affected by some error. "Traditionally, the writ of habeas corpus could not be used to attack even an erroneous judgment, unless that judgment was void for lack of jurisdiction." *Runyan*, 121 Wn.2d 441. " 'Jurisdiction' refers to personal and subject-matter jurisdiction, including sentences based on non-existent laws." *Id.* at 441 n.5. Although this rule originally precluded attack if the court had jurisdiction over the person and the subject matter, the rule was modified when the court determined that in order to render a judgment that would be immune from collateral attack, the court had to have not only jurisdiction of the subject matter and the person, but also the authority to render the particular judgment in question. *See In re Habeas Corpus of Horner*, 19 Wn.2d 51, 55-58, 141 P.2d 151 (1943).[17] Even with this modification, a habeas corpus petition would not succeed if " 'the petitioner was held by any process or judgment good upon its face.' " *Runyan*, 121 Wn.2d at 442 (quoting *Lybarger*, 2 Wash. at 134).[18]

---

[17] Before this change in the law, the court had held that habeas corpus would not lie for the discharge of a petitioner who was held under an unconstitutional statute or a statute that had been repealed, and that the remedy for such an erroneous judgment was through appeal. *In re Habeas Corpus of Newcomb*, 56 Wash. 395, 401, 105 P. 1042 (1909).

[18] Prior to 1947, when the legislature amended the state statute governing a court's inquiry into the legality of any judgment pursuant to which a person is confined, decisional law limited postconviction relief pursuant to a petition for a writ of habeas corpus to cases where the judgment was void on its face. In 1947, the legislature changed the state statute and added an exception permitting further inquiry "where it is alleged in the petition that rights guaranteed the petitioner by the Constitution of the state of Washington or of the United States have been violated." RCW 7.36.130(1); *see* LAWS OF 1947, ch. 256, § 3. This began an expansion of the substantive scope of habeas corpus inquiry, which then developed " 'on a case-by-case basis of a somewhat haphazard habeas corpus procedure.' " 4A

¶57 But there was no time limit that applied to the coextensive common law, statutory, and constitutional rights (and this was true both at the time of statehood and when the grounds for relief were expanded to include the court's authority to render the particular judgment). Therefore, in *Runyan* we had to determine whether RCW 10.73-.090(1), as modified by RCW 10.73.100, imposed a time limit in conflict with the limitless time permitted under the suspension clause. "A strict statute of limitations on all habeas petitions would be a derogation of the common law writ of habeas corpus and hence, an unconstitutional suspension of the writ." *Runyan*, 121 Wn.2d at 444.

¶58 We found two provisions of the statutes preserve the constitutional right. First, we concluded that the exception in RCW 10.73.100(5) to RCW 10.73.090(1)'s one-year time bar, for sentences imposed in excess of the court's jurisdic-

---

KARL B. TEGLAND, WASHINGTON PRACTICE CrR 7.8 author's cmt. 4, at 539 (7th ed. 2010). In response, this court promulgated CrR 7.7 to achieve a unified, systematic and expeditious procedure for postconviction relief. Three years later, in 1976, the court reformulated the rule, in RAP 16.3-.15, to provide for postconviction relief by personal restraint petition.

As noted, the majority seems to think that examining documents outside the judgment and sentence is simply a continuation of the practice that began in 1947. But the expanded inquiry was then determined necessary because of expanded scope of habeas review under the state statute. *See generally, e.g., Buckingham v. Cranor*, 45 Wn.2d 116, 273 P.2d 494 (1954); *Palmer*, 45 Wn.2d 278; *see Thorne v. Callahan*, 39 Wn.2d 43, 234 P.2d 517 (1951); *Gensburg v. Smith*, 35 Wn.2d 849, 215 P.2d 880 (1950). When the court began to inquire into possible violations of constitutional rights, as a basis for obtaining relief, the court also began to look beyond the judgment and sentence and in many cases evidentiary hearings were necessary.

In 1989, when the legislature enacted RCW 10.73.090 and .100, it also amended RCW 7.36.130 to provide:

> No court or judge shall inquire into the legality of any judgment or process whereby the party is in custody, or discharge the party when the term of commitment has not expired, in either of the cases following:
>     (1) Upon any process issued on any final judgment of a court of competent jurisdiction except where it is alleged in the petition that rights guaranteed the petitioner by the Constitution of the state of Washington or of the United States have been violated *and the petition is filed within the time allowed by RCW 10.73.090 and 10.73.100*.

LAWS OF 1989, ch. 395, § 3 (emphasis added).

tion, was enough to preserve the jurisdictional inquiry protected by the suspension clause.

¶59 We also concluded that RCW 10.73.090(1)

> itself only applies to attacks on judgments rendered by "a court of competent jurisdiction", thereby specifically *excluding from its ambit* any petition which calls for the *constitutional habeas inquiry into jurisdiction.* RCW 10.73.090. We find that *the constitutional scope of habeas relief has been explicitly preserved by this statute* and that, hence, the statute is constitutional.

*Runyan*, 121 Wn.2d at 444 (emphasis added). This statute preserves "the constitutional core of habeas corpus." *Id.* Thus, RCW 10.73.090(1) itself embodies the principle that no time limit applies in criminal cases insofar as the right to petition for relief from personal restraint (the successor to the petition for a writ of habeas corpus) is protected under the suspension clause and also as it developed under the common law.

¶60 Early in our state's history, numerous cases were decided that illuminate the scope of the constitutional habeas inquiry and the inquiry at common law as it evolved to include contemplation of whether a court had authority to render the particular judgment. These cases repeatedly referred to the unassailability by collateral attack of judgments that were facially valid. *E.g.*, *Lybarger*, 2 Wash. at 136 ("[f]rom an examination of all the cases that we have been able to find we think our statute is constitutional, and that under it we are precluded from questioning a judgment of a court of general jurisdiction *fair upon its face*" (emphasis added)); *In re Habeas Corpus of Permstick*, 3 Wash. 672, 674, 29 P. 350 (1892) (granting writ of habeas corpus where "the commitment *shows on its face* that the prisoner is detained for a cause not recognized by the law as ground for a judgment of imprisonment, and therefore not within the possible jurisdiction of any court" (emphasis added)); *In re Habeas Corpus of Parent*, 112 Wash. 620, 622, 129 P. 947 (1920) (court declined to consider proceedings leading up to

commitment and judgment where commitment *"upon its face,* shows legal cause for the petitioner's imprisonment" and was issued by a court of general jurisdiction (emphasis added)); *In re Habeas Corpus of Bishop,* 114 Wash. 245, 246, 194 P. 971 (1921) (commitment, in effect, was *"valid on its face"* where court had jurisdiction of the person and the subject matter (emphasis added)); *In re Habeas Corpus of Voight,* 130 Wash. 140, 143, 226 P. 482 (1924) (*Voight* I) (" '[a] judgment by a court of competent jurisdiction, *valid upon its face,* and a valid commitment under it, is an unanswerable return to a writ of habeas corpus' " (emphasis added) (quoting *Smith v. Hess,* 91 Ind. 424, 427-28 (1884)); *Voight*[19] *v. Mahoney,* 10 Wn.2d 157, 162-65, 116 P.2d 300 (1941) (*Voight* II) (surveying cases for the same proposition stated in *Voight* I and concluding that where the judgment was not *"void upon its face,* even though it may have been erroneous, it cannot be attacked collaterally by petition for writ of habeas corpus presented to this court" (emphasis added) (emphasis omitted)); *In re Habeas Corpus of Behrens,* 24 Wn.2d 125, 133, 163 P.2d 587 (1945) ("proceedings to obtain a writ of habeas corpus are not available or permissible to review trial errors, but are limited by law to those cases where it appears that the judgment, including the sentence upon which the petitioner for such writ is held in confinement, is *void upon its face"* (some emphasis omitted)).

¶61 When the legislature enacted RCW 10.73.090 and .100, the legislature did not write on a clean slate, given the history of habeas corpus relief and the common law antecedents to personal restraint petitions, as well as rules relating to personal restraint petitions themselves. I am convinced that in distinguishing between judgments and sentences valid on their face and judgments and sentences not valid on their face, and between judgments and sentences rendered by courts of competent jurisdiction and judgments and sentences not rendered by courts of compe-

---

[19] The case name is spelled incorrectly as "Voigt." We will cite this case using the correct spelling of "Voight."

tent jurisdiction, the legislature had in mind the constitutional and historical scope of the right to seek collateral relief. The description in RCW 10.73.090(1) of a judgment and sentence "valid on its face" has strong historical antecedents. Indeed, this very language shows that the statute harkens back to the origins of habeas corpus and personal restraint in this state. The words "valid on its face" and the reference to a court of competent jurisdiction in the statute implicate the kind of inquiry that a court could conduct when faced with a petition for a writ of habeas corpus under *Lybarger* and other early cases.

¶62 Early case law shows that this was a stringent standard, rigorously applied. "Determinations as to voidness were, as a matter of course, made judicially without looking into and examining the record and without any testimony or evidence being adduced by remand to a trial court." *Holt*, 84 Wn.2d at 843 (citing *Grieve*, 22 Wn.2d 902). Two cases raising the same issue concerning the court's authority to render the particular judgment show the difference in results between a judgment invalid on its face and one that was not. In *Horner*, 19 Wn.2d 51, the petitioner complained that he had been denied the nonwaivable right then granted by statute to have a jury determine the degree of murder and the punishment when the defendant pleaded guilty to murder. The court granted the petition for a writ of habeas corpus on this ground, while emphasizing that it was of "*controlling importance*" that the court's failure to call a jury "*appears upon the face* of the judgment and sentence." *Id.* at 53 (emphasis added). The court also noted that while the basis for an attack now included the court's lack of authority to render the particular judgment in question, in addition to lack of jurisdiction over the person and the subject matter, the court still would not engage in a factual inquiry to determine whether the judgment and sentence was void. *Id.* at 56. In contrast, in *Voight* I, the petitioner asserted the same ground for relief—that after he pleaded guilty to murder, a jury had not been impaneled

as statutorily required to determine the degree of murder and the punishment. The court denied the petition for a writ of habeas corpus because the judgment of conviction was not void on its face, though it might have been erroneous. *Voight* I, 130 Wash. at 143-44. Unlike the situation in *Horner*, the judgment in *Voight* I did not show the error on the face of the judgment.[20]

¶63 There was one narrow exception to the rule that a court would not look behind a judgment valid on its face: if it was impossible to determine from the judgment the precise charge for which the petitioner was sentenced, a court could examine the judgment in connection with the record, *solely* for the purpose of determining that precise charge. *Sorenson v. Smith*, 34 Wn.2d 659, 209 P.2d 479 (1949); *see In re Habeas Corpus of Clark*, 24 Wn.2d 105, 112, 163 P.2d 577 (1945).[21] In addition, in assessing facial voidness or validity, the court could take judicial notice that a particular court was a court of general jurisdiction. *E.g.*, *Grieve*, 22 Wn.2d at 910. The court could also take judicial notice of relevant statutes. *E.g.*, *Clark*, 24 Wn.2d at 111; *Behrens*, 24 Wn.2d at 133 (proceeding to obtain a writ of habeas corpus was not available where the judgment did

---

[20] The petitioner in *Voight* I did not give up, however. Approximately 17 years later, in *Voight* II, he made the same argument, evidently relying on the fact that in the interim the relevant records of his conviction, formerly deposited in the Cowlitz County courthouse, were lost or destroyed. The court rejected the argument, holding that the earlier *Voight* case was determinative.

[21] *Sorenson* stated a narrow exception to the general rule that a court would not look behind the face of the judgment and sentence. Although the majority believes I have mischaracterized the case, even the language quoted by the majority shows that the court recognized the general rule and the exception endorsed in *Sorenson*. Majority at 129 n.3. In addition, the majority's description of *Clark* is inaccurate. Majority at 129 n.3. The court concluded in *Clark* that "a complete and conclusive answer to all of the" habeas petitioner's contentions was provided by the rule that "[p]roceedings to obtain a writ of *habeas corpus* are not available or permissible to review trial errors, but are limited by law to those cases where it appears that the judgment, including the sentence pursuant to which the petitioner for such writ is held in confinement, *is void on its face*" and that the issue whether the judgment was invalid was " 'to be resolved by an examination of the judgment pleaded only, *and not by opening up the record* or by the taking of testimony.' " *Clark*, 24 Wn.2d at 116-17 (emphasis added) (quoting *Grieve*, 22 Wn.2d at 904).

"not show upon its face, nor when read in connection with any applicable statute, that it [wa]s void").

¶64 In enacting RCW 10.73.090(1), the legislature understood the scope of the right to collaterally attack a judgment in a criminal case as protected by the suspension clause and as it had developed at common law. I believe history helps to show that RCW 10.73.090(1) and .100 evidence legislative intent to restrict the flow of personal restraint petitions to a degree consistent with those rights as they existed early in our state's history, while at the same time permitting without time limit petitions asserting the grounds set out in RCW 10.73.100. The historical context suggests that before the one-year time bar can be avoided, absent application of any of the exceptions in RCW 10.73.100, the judgment and sentence *on its face* must show invalidity that will excuse the time bar.

¶65 In summary, the plain language of RCW 10.73-.090(1), its purpose, and its context in relation to the history of the right to petition for a writ of habeas corpus, precursor to personal restraint petitions, support the conclusion that when applying this provision a court should not go behind the judgment and sentence and examine the record or other documents that a petitioner argues shows invalidity of a judgment and sentence that is, on its face, valid. As established early on, a court may take judicial notice of relevant statutes in making a determination of facial validity.

¶66 A person convicted of a crime has the right of appeal and a far-ranging substantive right to seek collateral relief within the year after the judgment becomes final. He or she also may seek collateral relief on the grounds set out in RCW 10.73.100, which encompasses a range of serious challenges that may be made at any time in an attempt to obtain relief from confinement. Finally, as Justice Stephens' concurrence explains, RCW 10.73.090(1) itself describes grounds that may be argued without regard to the one-year time bar.

¶67 I would reverse our case law that has allowed consideration of personal restraint petitions that do not meet these standards and would hold that RCW 10.73-.090(1) means exactly what it says. Invalidity of the judgment and sentence must be apparent on the face of the judgment and sentence. If it is not, the petition must be denied unless it asserts solely grounds stated in RCW 10.73.100. The court should not look at charging documents, except in the rare case confusion appears *on the face* of the judgment and sentence regarding for what crime the petitioner was sentenced, and should not examine plea documents, instructions, or any other portion of the record. Statutes may be considered, as these are always the proper subject of judicial notice. As stated earlier, this would not prevent an individual from petitioning for collateral relief on any substantive basis. It would, however, prevent the individual from doing so in an untimely manner.

¶68 Turning to the present case, Mr. Coats maintains that his judgment and sentence erroneously states that his maximum sentence for conspiracy to commit robbery is life in prison, when in fact by statute it was 10 years. He urges that this error is an invalidity on the face of the judgment and sentence that not only avoids the one-year time bar for a claim based on this invalidity, but also avoids the time bar with respect to any and all other challenges he brings to his conviction and sentence. He contends, specifically, that the error opens the door to his attack on the voluntariness of his guilty plea.

¶69 As mentioned, both the majority and Justice Stephens' concurrence conclude that errors rendering a judgment invalid as contemplated for purposes of RCW 10.73.090(1) occur when a court exceeded its authority in entering the judgment or sentence.[22]

---

[22] Justice Stephens' concurrence states that sentences in excess of statutory authority can occur when a "court imposes a sentence for a crime that it lacks authority to punish" and when the sentence imposed is in excess of the court's statutory authority. Concurrence (Stephens, J.) at 164. These are essentially the

¶70 However, in a confusing analysis, the majority appears to consider harm to the petitioner as part of the inquiry into whether a judgment and sentence is invalid on its face. The majority disclaims having done so, but I believe its analysis is to the contrary. On the facts, the majority concludes that no invalidity appears on the face of the judgment and sentence because, although the maximum term for the conspiracy to commit robbery conviction is erroneously stated on the face of the judgment and sentence, the petitioner was in fact sentenced within the standard range of possible sentences for that offense. The inference is that because Coats will suffer no actual consequence as a result of the error, the judgment and sentence is not invalid on its face.

¶71 But the fact is that the court had no authority to impose a sentence with a maximum of life for the conviction of conspiracy to commit robbery, i.e., the court had no authority to render the particular judgment. As the concurrence accurately points out, the issue of harm, i.e., prejudice, bears on whether the petitioner is entitled to relief, and this is an issue that is simply not addressed if a petition is dismissed because it is untimely.

¶72 The majority also erroneously indicates that RCW 10.73.090 is a substantive provision rather than a procedural bar; indeed, the majority expressly refers to a *showing of prejudice* "before *relief* is appropriate due to an error on the face of a judgment and sentence." Majority at 142-43 (emphasis added). RCW 10.73.090 is not a substantive provision governing relief from restraint. It is a procedural time bar, as I have noted. The fact that particular grounds are identified in RCW 10.73.090(1) and .100 that avoid the time bar does not alter the nature of RCW 10.73.090(1) as a procedural time bar. Put another way, RCW 10.73.090 together with RCW 10.73.100 do not establish when relief

same; in both instances the court lacks authority to impose the particular sentence or, stated differently, in both instances the court imposes a sentence in excess of its authority.

will be granted, but instead establish what types of challenges may be considered more than one year after a petitioner's judgment and sentence is final.

¶73 Finally, the majority refuses to "articulate an unyielding definition" of the term "valid on its face" as it is used in RCW 10.73.090(1). Majority at 134. The majority thus disregards the court's obligation to interpret this language and provide a definite and fixed meaning and provides no useful guidance for future cases.

¶74 Unlike the majority, Justice Stephens' concurrence correctly concludes that prejudice or harm is irrelevant to the question whether the judgment and sentence is valid or invalid on its face, and properly concludes that in imposing a maximum sentence in excess of the statutory maximum, the trial court imposed a sentence that it lacked authority to impose. Existence of such invalidity, in and of itself, avoids the procedural time bar. However, a petitioner is not entitled to relief unless he or she can establish prejudice resulting from the error. Thus, prejudice is relevant to consideration of the substantive merits of a petitioner's claim for relief from restraint, but only after a court determines that the petition is not procedurally time barred.

¶75 The trial court erred in imposing a sentence with a maximum sentence in excess of that which is authorized and this invalidity appears on the face of the judgment and sentence.[23] This avoids the time bar for this claim. However, the error does not affect Mr. Coats's actual confinement. Coats is therefore unable to establish prejudice resulting from the trial court's error regarding the maxi-

---

[23] The majority disagrees with the "factual predicate underlying" my conclusion that the trial court erred in imposing a maximum sentence in excess of that which is authorized and this invalidity appears on the face of the judgment and sentence. Majority at 143 n.13. The majority says that the trial judge did not impose a sentence in excess of that authorized. *Id.* However, as I point out above, the trial court had no authority to impose a maximum sentence of life for the conviction for conspiracy to commit robbery because by statute the maximum is 10 years. The trial court erred in imposing this maximum life sentence and the judgment and sentence discloses this invalidity on its face.

mum sentence for the conviction of conspiracy to commit robbery and can obtain no relief from detention based upon the invalidity that appears on the face of his judgment and sentence.

¶76 Coats's challenge to the validity of his guilty plea should not be considered. I agree with the majority and Justice Stephens' concurrence that the one-year time bar is not avoided for any and all postconviction challenges once a petitioner shows an invalidity on the face of the judgment and sentence as contemplated by RCW 10.73.090(1). Any such conclusion would be antithetical to the entire scheme and purpose of the statutes. Provided that the judgment and sentence is entered by a court of competent jurisdiction, the time bar can be avoided only if each ground asserted either involves an invalidity appearing on the face of the judgment and sentence within the meaning of RCW 10.73.090(1) or falls within the scope of RCW 10.73.100. The challenge to Coats's guilty plea does neither.

¶77 Because Coats cannot show prejudice resulting from the invalidity regarding his sentence that appears on the face of the judgment and sentence, and because his challenge to his guilty plea is time barred, his personal restraint petition is appropriately dismissed.

¶78 STEPHENS, J. (concurring) — I appreciate the majority's attempt to explain the meaning of the phrase "valid on its face." RCW 10.73.090(1). While I agree with much of the majority's recitation of the history of collateral relief, I write separately to clarify the type of showing a petitioner must make to establish that a judgment and sentence is invalid. Unlike the majority, I do not believe our precedent requires a showing of harm or prejudice to the petitioner in order to demonstrate a facial invalidity in the first instance. The prejudice inquiry comes later, only after the petitioner establishes that the judgment and sentence is invalid.

¶79 I also write separately to explain the remedy that follows from an invalid judgment and sentence. This was

the major point of contention between the State and Coats in their briefing and at oral argument before this court. I would hold that the remedy for an invalid judgment and sentence is correction of the error that renders the judgment and sentence facially invalid, not opening the door to other time-barred claims.

## Invalidity of the Judgment and Sentence

¶80 The touchstone of an invalid judgment and sentence is the trial court exceeding its authority. This reflects the traditional showing that was necessary to challenge a judgment and sentence by collateral attack. "While a judgment and sentence could not be successfully challenged on habeas corpus if it were merely erroneous, sentences in excess of lawful authority could be successfully challenged." *In re Pers. Restraint of Goodwin*, 146 Wn.2d 861, 868, 50 P.3d 618 (2002).

¶81 Our cases illustrate that such overstepping generally occurs when the trial court imposes a sentence for a crime that it lacks authority to punish. *In re Pers. Restraint of Stoudmire*, 141 Wn.2d 342, 354, 5 P.3d 1240 (2000) (statute of limitations had expired on offense for which defendant was convicted); *In re Pers. Restraint of Thompson*, 141 Wn.2d 712, 717, 10 P.3d 380 (2000) (defendant convicted of offense that was not enacted until two years after offense occurred); *In re Pers. Restraint of Hinton*, 152 Wn.2d 853, 857, 100 P.3d 801 (2004) (defendants convicted of a nonexistent crime). It also commonly occurs when the sentence itself is in excess of the trial court's statutory authority. *Stoudmire*, 141 Wn.2d at 355-56 (sentence in excess of statutory maximum); *Goodwin*, 146 Wn.2d 866-67 (sentence in excess of what was statutorily authorized for correct offender score); *In re Pers. Restraint of West*, 154 Wn.2d 204, 211-13, 110 P.3d 1122 (2005) (sentence unlawfully prevented imposition of early release time); *In re Pers. Restraint of Tobin*, 165 Wn.2d 172, 176, 196 P.3d 670 (2008)

(sentence in excess of statutory maximum); *In re Pers. Restraint of Bradley*, 165 Wn.2d 934, 938-39, 205 P.3d 123 (2009) (sentence in excess of what was statutorily authorized for correct offender score). In each circumstance, we have found the judgment and sentence invalid because the trial court in some way exceeded its authority under the law.[24]

¶82 While the majority casts its rule in terms of the trial court's authority, the majority's application of the rule actually focuses on the effect of the alleged invalidity on the petitioner's rights. The result is that invalidity under the majority's approach requires a showing of prejudice to the petitioner, not simply that the trial court exceeded its authority. *See* majority at 143 ("While the judgment and sentence misstated the maximum possible sentence for one count, Coats was in fact sentenced within the standard range of possible sentences for that offense.").

¶83 These concepts—the court exceeding its authority and the petitioner experiencing prejudice—are not simply two sides of the same coin. It is possible for the trial court to exceed its authority and not affect the petitioner's rights. A slight modification to the facts of this case illustrates the point. The trial court sentenced Coats to 51 months for conspiracy to commit robbery, 240 months for conspiracy to commit murder, and 109 months for robbery, all to be served concurrently. Had the trial court sentenced Coats to 130 months for conspiracy to commit robbery, it would have clearly exceeded its authority because the statutory maximum for conspiracy to commit robbery is 120 months. But the court's overstepping arguably would not have affected Coats's rights because he was already sentenced to a concur-

---

[24] In dictum, the majority suggests that a miscalculated offender score will always render a sentence facially invalid and subject to collateral attack after one year. Majority at 139 n.10. This statement sweeps too broadly, as we have never endorsed looking to extraneous facts to challenge an offender score calculation. An erroneous calculation may result from a number of factors, such as misstatement of the offender's age, faulty comparability analysis, or an error in a guilty plea form, but these errors do not render the judgment and sentence facially invalid.

rent term of 240 months for conspiracy to commit murder. Under the majority's approach, then, this error would not render the judgment and sentence facially invalid.

¶84 By focusing its analysis on the harm to the petitioner, the majority perpetuates the misreading of *In re Personal Restraint of McKiearnan*, 165 Wn.2d 777, 203 P.3d 375 (2009), that has led some to import a prejudice requirement for finding a judgment and sentence invalid in the first instance. In *McKiearnan*, the judgment and sentence misstated the statutory maximum for a sentence as " '20 Yrs. to Life,' " when in fact the statutory maximum was just "life." 165 Wn.2d at 780 (quoting Mot. for Discretionary Review, App. C (J. & Sentence) at 1-4). Focusing on the trial court's authority, we explained that the misstatement did not render the judgment and sentence invalid under RCW 10.73.090. *Id.* at 782-83. This was so because the court "could have sentenced McKiearnan to a term within the standard range, to life imprisonment, or anywhere in between. The maximum was life in prison whether he was informed that the maximum sentence was 1 year to life, 10 years to life, or 20 years to life." *Id.* Simply put, the trial court had not exceeded its authority because it properly imposed the maximum sentence of life. This court observed, however, that "[t]o be facially invalid, a judgment and sentence requires a more substantial defect than a technical misstatement that had no actual effect on the rights of the petitioner." *Id.* at 783.

¶85 This latter statement has caused confusion insofar as it has been read to suggest a requirement that petitioners show prejudice to establish a facial invalidity. But, such a requirement makes little sense and would be unduly repetitive because we already require a threshold showing of prejudice when we reach the merits of a personal restraint petition. For constitutional claims, a petitioner must show actual and substantial prejudice to obtain relief. *In re Pers. Restraint of Gentry*, 170 Wn.2d 711, 714, 245 P.3d 766

(2010), *cert. denied*, 132 S. Ct. 453 (2011). For nonconstitutional claims, we require a showing that the alleged error constitutes a fundamental defect that inherently resulted in a complete miscarriage of justice. *Id.* Our consistent approach has thus been to analyze whether the judgment and sentence is invalid (without regard to prejudice to the petitioner) and, if so, to ask whether the petitioner can show the requisite prejudice to obtain relief on the merits. *See Stoudmire*, 141 Wn.2d at 355-56 (miscarriage of justice); *Thompson*, 141 Wn.2d at 719 (miscarriage of justice); *Goodwin*, 146 Wn.2d at 876-77 (miscarriage of justice); *Hinton*, 152 Wn.2d at 858-59 (actual and substantial prejudice); *West*, 154 Wn.2d at 209, 213 (miscarriage of justice). *But see Tobin*, 165 Wn.2d 172 (no discussion of prejudice).

¶86 If we meant to change the law in *McKiearnan*, we would have said so. To the extent *McKiearnan* has been read to impose a prejudice overlay on the facial invalidity question, that reading is wrong. The touchstone of an invalid judgment and sentence is the court exercising authority it does not have.

¶87 Coats's judgment and sentence is invalid on its face because it reflects that the trial court ordered a sentence outside its statutory authority. No statute allowed the trial court to order a maximum life sentence for conspiracy to commit robbery. To the contrary, the relevant statute prescribed a maximum sentence of 120 months for the offense. Thus, Coats's claim that the judgment and sentence misstated the maximum penalty falls within the exception in RCW 10.73.090 for an invalid judgment and sentence. Because the one-year time bar does not apply, we may consider the claim on the merits.

¶88 On reaching the merits, however, we must conclude that Coats is not entitled to any relief. As the majority points out, Coats does not specify whether his claim of a misstated maximum in the judgment and sentence is of a constitutional magnitude. If it were, Coats would not be

able to show actual and substantial prejudice because the misstatement does not affect the actual length of his incarceration. If the claim were nonconstitutional, it would likewise fail on the merits because even though the misstatement may be a fundamental defect, it has not resulted in a gross miscarriage of justice. Thus, while the misstated maximum sentence renders Coats's judgment and sentence invalid, his claim ultimately fails because he has not demonstrated any resulting prejudice.

### *Remedy for Invalidity*

¶89 The analysis does not end with denying relief on Coats's claim of an invalid judgment and sentence because his untimely petition also raises a claim challenging the voluntariness of his guilty plea. Coats argues that we must address the guilty plea claim if we find his judgment and sentence invalid. In his view, a facial invalidity waives the one-year time bar for *all* claims, including those that do not relate to the invalidity of the judgment and sentence. In other words, Coats asserts that the claim of facial invalidity under RCW 10.73.090 is merely a gateway to allow consideration of other time-barred claims.

¶90 To begin, it is important to consider how we typically process untimely personal restraint petitions. The six enumerated exceptions to the time bar are listed in RCW 10.73.100.[25] If a petition raises a claim that fits one of these

---

[25] RCW 10.73.100 provides:

The time limit specified in RCW 10.73.090 does not apply to a petition or motion that is based solely on one or more of the following grounds:

(1) Newly discovered evidence, if the defendant acted with reasonable diligence in discovering the evidence and filing the petition or motion;

(2) The statute that the defendant was convicted of violating was unconstitutional on its face or as applied to the defendant's conduct;

(3) The conviction was barred by double jeopardy under Amendment V of the United States Constitution or Article I, section 9 of the state Constitution;

(4) The defendant pled not guilty and the evidence introduced at trial was insufficient to support the conviction;

(5) The sentence imposed was in excess of the court's jurisdiction; or

exceptions, we will consider that specific claim. If a claim does not fit within one of the exceptions, we will not consider it. Further, under our mixed-petition rule, if one or more claims fall within the grounds listed in RCW 10.73.100, and one or more claims do not, then the entire petition is dismissed, including the claims that properly fall within an exception. *See, e.g.*, *In re Pers. Restraint of Hankerson*, 149 Wn.2d 695, 702-03, 72 P.3d 703 (2003). Under RCW 10.73.100, there is no notion of a claim serving as a gateway for consideration of other claims that do not fit within one of the enumerated exceptions.

¶91 When a claim does not fall within one of the exceptions to RCW 10.73.100, we have sometimes turned to RCW 10.73.090. *See, e.g.*, *Stoudmire*, 141 Wn.2d at 351. While the legislature did not specify "exceptions" to the one-year time limit in RCW 10.73.090, it did designate two preconditions for application of the time bar: (1) that the judgment and sentence be "valid on its face" and (2) that the judgment and sentence be "rendered by a court of competent jurisdiction." RCW 10.73.090(1). We have referred to these two preconditions as additional, discrete "exceptions" to the time bar. *Stoudmire*, 141 Wn.2d at 346, 349, 351; *see also Hankerson*, 149 Wn.2d at 698 (referring to the preconditions in RCW 10.73.090 as "limited exceptions").

¶92 The one-year time bar in RCW 10.73.090 presupposes that some, if not many, meritorious claims will be barred from consideration when petitioners fail to raise the claims in a timely manner. Thus, in the vast majority of cases, the interests of finality and efficiency that justify the one-year time bar will prevail over a petitioner's interest in having his meritorious claim heard. The exceptions listed in

(6) There has been a significant change in the law, whether substantive or procedural, which is material to the conviction, sentence, or other order entered in a criminal or civil proceeding instituted by the state or local government, and either the legislature has expressly provided that the change in the law is to be applied retroactively, or a court, in interpreting a change in the law that lacks express legislative intent regarding retroactive application, determines that sufficient reasons exist to require retroactive application of the changed legal standard.

RCW 10.73.090 and RCW 10.73.100 represent the only situations in which the legislature has deemed that finality and efficiency must yield to the interests that weigh in favor of considering an untimely claim on its merits.

¶93 Coats would have us construe the invalidity exception in RCW 10.73.090 as a "super exception" that removes the time bar not only for the specific claim that fits the exception, but for all other claims as well. I see no reason to treat the exceptions in RCW 10.73.090 so differently from the exceptions listed in RCW 10.73.100. There is no indication that the legislature intended an invalidity in the judgment and sentence to have the sweeping effect Coats attributes to it—that is, to waive the time bar for all untimely claims regardless of whether they relate to the validity of the judgment and sentence. As noted above, none of the exceptions to RCW 10.73.100 have that affect. Moreover, to open the door to claims that do not fall within one of the enumerated exceptions in RCW 10.73.090 or RCW 10.73.100 would require us to ignore the interests of finality in situations where the legislature intended finality to carry the day.

¶94 Reading RCW 10.73.090 and RCW 10.73.100 together demonstrates that the remedy for an invalid judgment and sentence is correction of the error. If a claim falls within the exception in RCW 10.73.090 for an invalid judgment and sentence, then we will address only that claim. Like RCW 10.73.100, RCW 10.73.090 does not open the gateway to consideration of other time-barred claims.

¶95 While the notion of a limited remedy is inherent in the statutory scheme, I recognize that this court has not been entirely consistent in adhering to this approach. We seemingly followed it in *Stoudmire*, where the petitioner raised numerous untimely claims, including a claim that his guilty plea was involuntary and a claim that the judgment and sentence was invalid because the trial court exceeded its sentencing authority. 141 Wn.2d at 347. We reached the merits of the facial invalidity claim because it

fit within an exception under RCW 10.73.090. *Id.* at 354. Stoudmire's guilty plea claim, however, was dismissed as untimely because it was submitted as part of a mixed petition—i.e., it was barred under RCW 10.73.100—and the claim did not fall within either exception to RCW 10.73.090. *See id.* at 350.

¶96 Our analysis in *Bradley*, however, suggested a more expansive remedy. There, the petitioner raised two separate claims after the one-year time limit: that the guilty plea was involuntary and that the judgment and sentence was invalid, both as a result of a miscalculated offender score. *See Bradley*, 165 Wn.2d at 938-39. The State conceded that the misstated offender score rendered the judgment and sentence invalid. *Id.* But the State argued that the remedy for the invalidity was limited to correcting the sentencing error. *Id.* at 939. We nonetheless addressed Bradley's guilty plea claim and concluded that he was entitled to withdraw his plea. *Id.* at 944.

¶97 The majority opinion in *Bradley* makes no mention of either RCW 10.73.090 or RCW 10.73.100. There is no discussion of the facial invalidity analysis from *Stoudmire*, nor does the majority discuss the important policy implications of a rule that would allow an invalid judgment and sentence to waive the time bar for all purposes. Rather, the entire majority opinion focuses on the merits of Bradley's guilty plea claim, with particular emphasis on whether Bradley could withdraw his guilty pleas as a " 'package deal.' " *Id.* at 941-43. The concurrence and the dissent likewise focus on the "package deal" analysis and make no mention of the appropriate remedy for an invalid judgment and sentence. *Id.* at 944-46 (Owens, J., concurring); *id.* at 946-48 (Alexander, C.J., dissenting). The absence of any such discussion, together with the general focus of each opinion on the "package deal" analysis, confirms that the issue of the appropriate remedy for a facial invalidity simply was not before the court in *Bradley*. I agree with the majority that *Bradley* should not be read as precedent on an issue it expressly did not address.

¶98 Turning to Coats's petition, a proper prejudice analysis requires us to dismiss his guilty plea claim as untimely. The claim does not fit within any of the exceptions listed in RCW 10.73.100. Nor does the claim fit within either exception listed in RCW 10.73.090. *See In re Pers. Restraint of Hemenway*, 147 Wn.2d 529, 533, 55 P.3d 615 (2002) (holding that an involuntary guilty plea does not render the judgment and sentence invalid). Because the claim does not fall within any of the enumerated exceptions, we can say with confidence that the legislature prioritized the interests of finality and efficiency over Coats's interest in having his guilty plea claim heard on the merits in a personal restraint petition.

¶99 Accordingly, Coats's personal restraint petition should be dismissed.[26]

FAIRHURST, J., concurs with STEPHENS, J.

Reconsideration denied February 16, 2012.

---

[26] Because I do not agree with the majority that the misstated maximum sentence is a "clerical mistake" under CrR 7.8, I would not remand for correction of the judgment and sentence.