IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| In the Matter of the Personal Restraint of | No. 84857-7-I |
| JORGE NAVA MARTINEZ JR., | UNPUBLISHED OPINION |
| Petitioner. | |

BOWMAN, J. — Jorge Nava Martinez Jr. seeks relief through this personal restraint petition (PRP) from his jury conviction for first degree murder. He argues he is entitled to relief because his trial attorney provided ineffective assistance, his trial attorney infringed on his constitutional right to a complete defense, the State suppressed evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), and it amounts to newly discovered evidence warranting a new trial, and the cumulative effect of these errors deprived him of his rights to due process and a fair trial. We disagree and deny his petition.

FACTS[1]

On February 19, 2018, Tye Burley won $2,000 at a casino and rented a hotel room, which he shared with his friend and drug supplier, Jeremy Dailey.

---

[1] We repeat the relevant facts set forth in our prior opinion only as necessary for the issues we address in this PRP. *See State v. Nava Martinez*, No. 80947-4-I (Wash. Ct. App. June 14, 2021) (unpublished), https://www.courts.wa.gov/opinions/pdf/809474orderandopin.pdf.

Dailey planned to steal Burley's money and called on his friends, Jared Evans, Nava Martinez, and Nava Martinez's brother, Jose Nava, to help.

Nava Martinez told the others he would get a "cuete"[2] for the robbery. The men knew Burley was taking his girlfriend, Kristin Schram, to a tattoo shop on February 20, 2018, and they planned to mace and rob Burley as he left the shop. The men drove a white Dodge Durango belonging to Nava's girlfriend, Tiffany Beston, to the tattoo shop. But they aborted the plan when a police car drove by. They instead went to Burley's hotel to carry out the robbery.

The four men sat in the Durango and smoked methamphetamine, awaiting Burley's return to the hotel. When Burley and Schram returned, Nava Martinez and Nava got out of the car and confronted them. One of the men pointed a gun at Schram, and she ran away. Nava Martinez and Nava then beat Burley to the ground and robbed him, and Nava Martinez shot Burley in the head. Nava Martinez, Nava, Dailey, and Evans fled the scene, split the money, and abandoned the car.

Burley died from his injuries two days later. Everett police officers found the abandoned Durango about a week after the murder. The police never recovered the gun used to kill Burley. But the medical examiner removed a bullet jacket and two lead fragments from Burley's head. Forensic testing showed a .38 caliber handgun fired the bullet. Nava Martinez and Nava fled to California, where police later identified and arrested them.

---

[2] "Cuete" can be slang for "gun" in Spanish.

2

The State charged Nava Martinez, Nava, Dailey, and Evans with first degree murder with firearm enhancements. Dailey and Evans pleaded guilty to reduced charges in exchange for "truthful" testimony against Nava Martinez and Nava. At trial,[3] the State called Nava's girlfriend, Beston, who testified she owned a Beretta Pico .380 caliber handgun, which she kept in a lockbox in her home. Beston said Nava knew of the gun and had access to it. She discovered that her gun was missing several months after Burley was shot.

Washington State Patrol Crime Laboratory (WSPCL) forensic scientist Dijana Coric testified about the bullet jacket recovered from Burley. Coric testified that she entered its characteristics into a Federal Bureau of Investigation (FBI) database, which returned a list of guns that could fire a bullet with the same characteristics. A Beretta Pico .380 was not on the list. Even so, Coric testified that the list generated through the FBI database was not "all-inclusive," so she could not entirely rule out Beston's gun as the source of the bullet jacket without seeing the gun. But on cross-examination, Coric agreed that it was highly unlikely that a Beretta Pico .380 fired the bullet jacket.

Dailey testified against Nava Martinez at trial. Dailey testified that he was threatened while in jail to write two letters claiming Nava Martinez and Nava did not kill Burley, and that the brothers were in the back seat of the Durango during the robbery. He sent one letter to "some address," and he was supposed to send the other to Nava Martinez's attorney. But Dailey did not send the second letter

---

[3] The State tried Nava Martinez and Nava jointly.

because he was told to make a phone call to Nava Martinez's mother instead, proclaiming the brothers' innocence.

A jury convicted Nava Martinez of first degree murder while armed with a firearm, and the court sentenced him to 434 months. Nava Martinez appealed the conviction, alleging that 1) the State improperly minimized its burden of proof during jury selection, 2) the trial court erred in denying his motions for a mistrial after witnesses twice violated a pretrial order, 3) the prosecutor committed misconduct by vouching for two witnesses, 4) the trial court erred in admitting certain evidence, 5) the cumulation of these errors resulted in a denial of a fair trial, and 6) the court erred in calculating his offender score and improperly imposed a DNA[4] fee.[5] We rejected Nava Martinez's claims, affirming his conviction.[6] But we reversed his sentence and remanded to the trial court for resentencing and to strike the DNA fee.[7]

Nava Martinez then timely filed this PRP.

ANALYSIS

Nava Martinez argues he is entitled to relief because he had ineffective assistance of counsel, his trial attorney infringed on his constitutional right to a complete defense, the State suppressed exculpatory evidence in violation of *Brady* and it amounts to newly discovered evidence warranting a new trial, and

---

[4] Deoxyribonucleic acid.

[5] *Nava Martinez*, No. 80947-4-I, slip op. at 5.

[6] *Id.* at 22.

[7] *Id.*

4

the cumulative effect of these errors deprived him of his right to due process and a fair trial.

Relief through a PRP is extraordinary. *In re Pers. Restraint of Coats*, 173 Wn.2d 123, 132, 267 P.3d 324 (2011). A petitioner may seek relief if they are under unlawful restraint. RAP 16.4(a). To succeed on a PRP, a petitioner must show that either 1) they were "actually and substantially prejudiced by constitutional error," or 2) their "trial suffered from a fundamental defect of a nonconstitutional nature that inherently resulted in a complete miscarriage of justice." *In re Pers. Restraint of Finstad*, 177 Wn.2d 501, 506, 301 P.3d 450 (2013).

1.  Ineffective Assistance of Counsel

Nava Martinez claims he received ineffective assistance of counsel because his trial attorney failed "to call a forensic scientist to rebut the State's testimony" that a Beretta Pico .380 could not be excluded as the gun that fired the bullet jacket. We disagree.

An ineffective assistance of counsel claim presents mixed questions of law and fact that we review de novo. *State v. K.A.B.*, 14 Wn. App. 2d 677, 707, 475 P.3d 216 (2020). The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee effective assistance of counsel. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011). There is a strong presumption that counsel's representation was reasonable. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). To succeed on a claim

of ineffective assistance of counsel, the defendant must show 1) that "counsel's performance was deficient" and 2) that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). If a petitioner fails to satisfy either of the *Strickland* prongs, we need not address the other. *Id.* at 697.

To determine whether deficient performance resulted in prejudice, we apply the same standard in a PRP as we do on appeal. *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 845-47, 280 P.3d 1102 (2012). That is, a successful ineffective assistance of counsel claim satisfies the PRP's actual prejudice requirement. *Id.* at 846-47. To show prejudice, a petitioner must establish there is a reasonable probability that "the result of the proceeding would have been different" absent counsel's deficient performance. *Id.* at 843. The "likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 111-12, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).

Here, we need not reach Nava Martinez's claim of deficient performance because he fails to show prejudice. Nava Martinez argues counsel's failure to call an expert deprived him of "the ability to develop a theory that the firearm used in the incident was *not* the Beretta Pico .380 that belonged to Beston." But this was precisely the defense Nava Martinez's attorney developed at trial.

At trial, defense counsel cross-examined WSPCL forensic scientist Coric as to the source of the bullet jacket, prompting her to concede that it was highly unlikely Beston's gun fired it. Defense counsel also cross-examined Beston

6

about when she noticed her gun was missing to cast doubt on the State's suggestion that Nava Martinez used her gun to kill Burley.[8]  And in closing argument, defense counsel highlighted that Beston's gun "was not the weapon that caused" Burley's death, and that her gun was different from the one "described" to the jury as the murder weapon.[9]

Nonetheless, even if Nava Martinez's attorney called a witness to testify that Beston's gun could not have been used to kill Burley, Nava Martinez fails to show that the testimony would have affected the outcome of his trial.  Ample evidence shows that Nava Martinez and Nava robbed Burley and that Nava Martinez shot Burley in the head with a .38 caliber firearm.

Dailey testified that Nava Martinez told him he planned to get a gun for the robbery.  Dailey said that while waiting at the hotel to rob Burley, Nava Martinez was in the driver's seat of the car and Nava was in the front passenger seat.  When Burley arrived, Nava Martinez and Nava got out of the car and ran over to him.  Dailey testified that he then heard a gunshot, and the brothers ran back to the Durango.  Nava Martinez was holding a gun and yelling that he shot Burley in the head.

Evans corroborated Dailey's testimony.  He similarly testified that when Burley got to the hotel, Nava Martinez and Nava "went and robbed him."  He said

---

[8] Beston testified that she had just "recently" discovered her gun was missing when officers came to her house looking for it, which was a few months before trial.

[9] Schram described the gun as silver with "a pretty long barrel."  Beston's Beretta Pico .380 is a small, semi-automatic pistol intended for concealed carry, with a short 2.7-inch barrel.

that he could not see the robbery but heard Burley scream " 'help,' " and then he heard a gunshot. Evans testified that Nava Martinez and Nava then ran back into the truck and Nava Martinez said, " 'I shot him in the head.' "

Further, investigators later found Nava Martinez's DNA on the steering wheel and Nava's DNA on the gearshift of the Dodge Durango. The evidence also showed that Nava Martinez fled after the shooting, and the police later arrested the brothers in California.

Because Nava Martinez can show no prejudice from his allegations of deficient performance, we reject his claim of ineffective assistance of counsel.[10]

2. Complete Defense

Nava Martinez argues that his restraint is unlawful and his conviction violates the Sixth Amendment because his trial counsel "actively opposed him and undermined his objectives" by "not introducing the letters . . . Dailey wrote for impeachment purposes." We disagree.

The due process clause of the Fourteenth Amendment to the United States Constitution and the compulsory process and confrontation clauses of the Sixth Amendment guarantee criminal defendants " 'a meaningful opportunity to present a complete defense.' " *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S. Ct.

---

[10] Nava Martinez also argues the State violated *Brady*, 373 U.S. at 87, by failing to disclose a photograph of the bullet jacket showing its cannelures, or grooves, and that the photograph amounts to newly discovered evidence warranting a retrial. According to Nava Martinez, the evidence was critical to his ability to argue that Beston's gun was not used to kill Burley. We note that the bullet jacket itself was both disclosed to Nava Martinez and admitted as evidence. Regardless, even if Nava Martinez could show a *Brady* violation or that the photographs were newly discovered evidence, he fails to show prejudice for the same reasons discussed above.

2142, 90 L. Ed. 2d 636 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485, 104 S. Ct. 2528, 81 L. Ed. 2d 413 (1984)).  Indeed, "an essential component of procedural fairness is an opportunity to be heard," and "[t]hat opportunity would be an empty one if the State were permitted to exclude competent, reliable evidence." *Id.*  But Nava Martinez does not allege the State improperly deprived him of his right to be heard.  And he fails to cite any authority that a defense attorney can deny him such a right.

Trial attorneys have—and must have—full authority to manage the conduct of the trial.  *Taylor v. Illinois*, 484 U.S. 400, 417-18, 108 S. Ct. 646, 98 L. Ed. 2d 798 (1988).  And we " 'afford the attorney a wide latitude and flexibility in his choice of trial psychology and tactics.' "  *In re Pers. Restraint of Stenson*, 142 Wn.2d 710, 735, 16 P.3d 1 (2001) (quoting *State v. Piche*, 71 Wn.2d 583, 590, 430 P.2d 522 (1967)).  Defense counsel is not required to "obtain the defendant's consent to 'every tactical decision.' "  *Florida v. Nixon*, 543 U.S. 175, 187, 125 S. Ct. 551, 160 L. Ed. 2d 565 (2004) (quoting *Taylor*, 484 U.S. at 418).  Whether to introduce certain evidence at trial is one of those tactical decisions in the purview of the attorney at trial.  That Nava Martinez disagreed with his attorney's decision not to use Dailey's letters for impeachment does not amount to a violation of his constitutional rights.[11]

---

[11] Nava Martinez claims that the cumulative effect of the trial errors, when taken together, "deprived him of his rights to due process and a fair trial."  *See State v. Weber*, 159 Wn.2d 252, 279, 149 P.3d 646 (2006) ("Cumulative error may warrant reversal, even if each error standing alone would otherwise be considered harmless.").  Because Nava Martinez identifies no trial error, the cumulative error doctrine does not apply.

Nava Martinez fails to show he received ineffective assistance of counsel, his counsel violated his constitutional rights, the State violated *Brady*, newly discovered evidence warrants a new trial, or cumulative errors deprived him of a fair trial. As a result, we deny his petition.

Brennan, J.

WE CONCUR:

Feldman, J.          Chung, J.